United States Court of Appeals,

Eleventh Circuit.

No. 96-5424.

UNITED STATES of America, Plaintiff-Appellee,

v.

Obdulio LAZO-ORTIZ, a.k.a. Obdulio Lazo, Defendant-Appellant.

March 10, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 96-383-CR-JAL), Joan A. Lenard, Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

In this appeal, we are faced with an issue of first impression in this circuit: whether the sentence of an alien convicted of illegally reentering the United States may be enhanced under U.S.S.G. § 2L1.2(b)(2) due to the prior commission of an "aggravated felony," as defined in the guideline, where the date of the prior offense precedes the effective date of the *statutory* definition of "aggravated felony" found at 8 U.S.C. § 1101(a)(43). We hold that, irrespective of any difference between the definitions in the statute and in the guideline, a defendant convicted of illegally reentering the United States can have his sentence enhanced for the prior commission of an aggravated felony in accordance with § 2L1.2. In so holding, we agree with the district court and affirm.

I

Obdulio Lazo-Ortiz, a Honduran national, stabbed Fernando Silva to death on April 19, 1990. He pled *nolo contendere* to one count of manslaughter on March 1, 1991, and was sentenced to six years in prison in the state of Florida. Following his release on April 1, 1993, he was deported

by the Immigration and Naturalization Service ("INS"). On April 15, 1996, INS officers discovered Lazo-Ortiz in the United States and arrested him. On June 28, 1996, Lazo-Ortiz pled guilty to illegally reentering the United States in violation of 8 U.S.C. § 1326(a).

A Pre-Sentence Investigation Report ("PSI") was prepared to which Lazo-Ortiz filed objections. Pursuant to U.S.S.G. § 2L1.2(a)(1995), Lazo-Ortiz's base offense level was 8, adjusted upwards by 16 levels because of § 2L1.2(b)(2), requiring the enhancement "[i]f the defendant previously was deported after a conviction for an aggravated felony." The PSI recommended a 3-level downward adjustment for timely acceptance of responsibility, yielding an adjusted offense level of 21. The PSI computed Lazo-Ortiz's criminal history score to be 3 resulting in a guideline range of 41-51 months. Lazo-Ortiz objected to the 16-level enhancement, arguing that his manslaughter conviction was not an "aggravated felony" to which the enhancement could apply, relying on the Ninth Circuit's holding in *United States v. Gomez-Rodriguez,* 77 F.3d 1150 (9th Cir.), *aff'd en banc,* 96 F.3d 1262 (9th Cir.1996), on principles of statutory construction, and on the rule of lenity.

After hearing argument on the enhancement issue and waiting for the Ninth Circuit's *en banc* decision in *Gomez-Rodriguez,* the district court determined that the 16-level enhancement was proper. *See United States v. Lazo-Ortiz,* 954 F.Supp. 254, 256 (S.D.Fla.1996). The court found that "the Sentencing Commission made all defendants sentenced on or after November 1, 1991, who have an aggravated felony conviction eligible for the sixteen-level increase without regard to the date such felony was committed," and that Congress allowed this provision to go into effect. *Id.* The guideline, the court found, exists independent of and separate from § 1326, and the statutory definition of "aggravated felony" is only relevant for determining the applicability of the statutory maximum penalties. Because the guideline range in Lazo-Ortiz's case did not come close to

reaching the maximum sentence for illegal reentry after commission of a *non*-aggravated felony, the applicability of the statutory definition was irrelevant. *Id.*

At the continuation of Lazo-Ortiz's sentencing hearing, the district court overruled further objections to his application of Guideline § 2L1.2(b)(2) and also overruled an objection to the defendant's criminal history score. The court sentenced the defendant to 41 months' imprisonment.

II

Reentering the United States without authorization after deportation is punishable by fine or by not more than two years' imprisonment. 8 U.S.C. § 1326(a). Sentences under that section can be enhanced for defendants previously convicted of a "felony" or "aggravated felony." 8 U.S.C. § 1326(b); *see United States v. Palacios-Casquete,* 55 F.3d 557, 560 (11th Cir.1995) (holding that 8 U.S.C. § 1326(b) provides for sentencing enhancements, not for separate offenses). An alien deported subsequent to a felony conviction (other than an aggravated felony) can be imprisoned "not more than 10 years," while a prior conviction for commission of an aggravated felony can result in a sentence of up to 20 years' imprisonment for unauthorized reentry. When § 1326(b) was added to title 8 in 1988, the term "aggravated felony" was defined as "murder, any drug trafficking crime as defined in section 924(c) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, or any attempt or conspiracy to commit any such act, committed within the United States." Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690, § 7342, 102 Stat. 4181, 4469-70 (prior to 1990 amendments).

In 1990, the definition of "aggravated felony" was substantially expanded to include, among other offenses, "any crime of violence," as defined in 18 U.S.C. § 16, that resulted in a term of imprisonment of at least five years. Immigration Act of 1990, Pub.L. No. 101-649, Title V, § 501(a)(3), 104 Stat. 4978, 5048 (1990) (prior to 1996 amendment). The Immigration Act provided

that the amended definition of aggravated felony applied to "offenses committed on or after the date of the enactment of this Act [November 29, 1990]." Pub.L. No. 101-649, § 501(b), 104 Stat. at 5048. Title 18 U.S.C. § 16 defines "crime of violence" to include "an offense that has as an element the use ... of physical force against the person or property of another."

The guideline applicable to violations of 8 U.S.C. § 1326 on the date of Lazo-Ortiz's sentencing was U.S.S.G. § 2L1.2. The base offense level for illegally reentering the United States was 8, with a possible 4-level enhancement if the defendant was deported after conviction of a felony, and a 16-level enhancement if the deportation followed an "aggravated felony" conviction. U.S.S.G. § 2L1.2(b). Another definition of "aggravated felony" was found in the commentary to § 2L1.2:

> "Aggravated felony," as used in subsection (b)(2), means ... any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years.... The term "aggravated felony" applies to offenses described in the previous sentence whether in violation of federal or state law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years. *See* 8 U.S.C. § 1101(a)(43).

U.S.S.G. § 2L1.2, comment. (n.7). While this definition of "aggravated felony" does not contain an effective date, implying its retroactivity, the "See cite" in the last sentence of the definition refers to the statutory definition of "aggravated felony" which, at the time of Lazo-Ortiz's sentencing, was subject to the effective date provision in § 501(b) of the 1990 Immigration Act.[1]

### III

We review the district court's interpretation of the criminal statute and Sentencing

---

[1]Both the statutory definition and the applicable guideline have been amended since Lazo-Ortiz's sentencing. There is now very little doubt that both the statutory and the guideline's definition of "aggravated felony" encompass prior offenses regardless of the date they were committed. *See* Act of September 30, 1996, Pub.L. No. 104-208, § 321(b), 110 Stat. 3009, 3009-628; U.S.S.G. § 2L1.2, comment. (n.1) (1997).

Guidelines *de novo.  See United States v. Bozza,* 132 F.3d 659, 661 (11th Cir.1998).

Lazo-Ortiz argues that the district court misapplied the Sentencing Guidelines when the court determined that the defendant's 1990 manslaughter offense was an "aggravated felony" that required the upward adjustment of his offense level.  According to appellant, the reference in U.S.S.G. § 2L1.2 to the statutory definition of aggravated felony incorporated that definition, along with its effective date, into the guideline.  Because Lazo-Ortiz's offense predated that effective date, the argument goes, it cannot be an "aggravated felony" supporting an enhancement of the appellant's offense level.  Furthermore, the appellant argues that even if we interpret the guideline's definition differently than the statutory definition, courts cannot enforce the guideline's definition because it impermissibly conflicts with statute and runs afoul of the rule of lenity.

The government argues that this case requires only the straight-forward application of the Sentencing Guidelines.  According to the government, the district court correctly concluded that the guideline's definition of "aggravated felony" is independent of the statutory definition and that the appellant makes too much of the reference to the statute in the guideline's commentary.

IV

The pivotal issue in this case is whether the Sentencing Commission intended to incorporate the statutory definition of "aggravated felony" into the guideline's definition by referring to the statutory definition in a citation at the end of U.S.S.G. § 2L1.2, comment. (n.7).  We agree with the government and with most of the courts of appeals that have considered the issue that § 2L1.2 is not dependent upon 8 U.S.C. § 1326 and that a previous offense may be an "aggravated felony" for the purpose of the 16-level enhancement in the guideline while not qualifying for the statutory

enhancement at 8 U.S.C. § 1326(b)(2).[2]  We disagree with the Ninth Circuit's conclusion that differences between the definitions require application of the rule of lenity.  While we agree that there is a difference between the definitions of "aggravated felony," that difference does not cause a conflict between the statute and the guideline or create an ambiguity as to what sentence applies to a conviction under 8 U.S.C. § 1326.

A

Only the Eighth Circuit, in a footnote, has concluded that § 1326 and U.S.S.G. § 2L1.2 are symmetrical and that the statutory definition applicable to § 1326 is fully incorporated into the guideline.  *See United States v. Maul-Valverde,* 10 F.3d 544, 545 n. 1 (8th Cir.1993).  Every other court of appeals has held that neither the structure of the statute and the guideline, nor the specific reference in the guideline to 8 U.S.C. § 1103(a)(43), indicate that there was to be any symmetry between the subsections of § 1326 and the subsections of the guideline, or between their respective definitions of "aggravated felony."  *See United States v. Reyna-Espinosa,* 117 F.3d 826, 830 (5th

---

[2]The government is correct that we need not interpret the effective date of the statutory definition of "aggravated felony" if we do not believe that it is incorporated into the guideline's definition.  However, we appear to have already committed ourselves on this issue.  Insofar as the 1990 Immigration Act added "crimes of violence" to the statutory definition, we have concluded that it only added those "crimes" that were committed after November 29, 1990.  *See Ramsey v. Immigration and Naturalization Service,* 55 F.3d 580, 582 n. 4 (11th Cir.1995); *Asencio v. Immigration and Naturalization Service,* 37 F.3d 614, 616 (11th Cir.1994).  *But see United States v. Adkins,* 102 F.3d 111, 113 (4th Cir.1996), *cert. denied,* --- U.S. ----, 118 S.Ct. 83, 139 L.Ed.2d 41 (1997) (holding that "offenses" in effective date provision referred to illegal reentry, not offense that led to deportation); *United States v. Garcia-Rico,* 46 F.3d 8, 10 (5th Cir.1995) (same).

In this respect, we would probably agree with the Ninth Circuit's *Gomez-Rodriguez* case which held that the effective date provision applies to the list of aggravated felonies, not the offense of illegal reentry.  *See Gomez-Rodriguez,* 96 F.3d at 1264.  But the appellant relies on that case to support his interpretation of U.S.S.G. § 2L1.2, an issue that the *Gomez-Rodriguez* case does not address.  As discussed *infra,* the Ninth Circuit has spoken on § 2L1.2 in subsequent cases.

Cir.1997); *United States v. Rios-Favela,* 118 F.3d 653, 657 (9th Cir.1997), *cert. denied,* --- U.S. ----, 118 S.Ct. 730, --- L.Ed.2d ---- (1998) (discussed *infra,* note 3); *United States v. Eversley,* 55 F.3d 870, 872 (3d Cir.1995); *United States v. Munoz-Cerna,* 47 F.3d 207, 211 (7th Cir.1995); *United States v. Frias-Trujillo,* 9 F.3d 875, 876-77 (10th Cir.1993).

The Seventh Circuit was faced squarely with the issue now before us: whether Munoz-Cerna's pre-November 29, 1990 "crime of violence" could be an "aggravated felony" allowing a 16-level enhancement. Like Lazo-Ortiz, the defendant argued that § 1103(a)(43) and its effective date in § 501(b) of the 1990 Immigration Act must be read into the guideline. *See Munoz-Cerna,* 47 F.3d at 210. The court found no evidence that the Sentencing Commission intended that the offense characteristics listed in § 2L1.2(b) correlate to the subsections of § 1326(b), and found some evidence to the contrary. For example, the court noted that the effective date of § 2L1.2 was November 1, 1991, almost a full year later than the effective date of the statutory definition. *See id.* at 211 n. 8. The court also based its conclusion that the enhancement was proper on the fact that Congress had the opportunity to reject or modify § 2L1.2 but chose not to do so. *See id.* at 212.

In the Third Circuit and Tenth Circuit cases, the defendants pled guilty to violations of 8 U.S.C. § 1326(b)(1) for illegally reentering the country following the commission of a non-aggravated felony. *See Eversley,* 55 F.3d at 870; *Frias-Trujillo,* 9 F.3d at 877. In both cases, the district courts determined, for sentencing purposes, that both defendants had in fact committed aggravated felonies, as defined in the § 2L1.2, and were eligible for the 16-level enhancement. Both defendants appealed, arguing that because they pled guilty to illegal reentry after the commission of a non-aggravated felony, they could not later be sentenced as if they had committed an aggravated felony. Both courts declined to find any symmetry between the statute and the guideline. Rather, the courts found that the Sentencing Guidelines direct a sentencing judge to apply the proper

subsection of § 2L1.2 depending on the "specific offense characteristics," which are not dependent on the particular subsection of § 1326 at issue. *See Eversley,* 55 F.3d at 872; *Frias-Trujillo,* 9 F.3d at 877-78.

The Fifth Circuit case shows that full incorporation of the statutory definition would most often work to a defendant's disadvantage because, in fact, the guideline's definition is much more limited than the statutory definition. In *Reyna-Espinosa,* it was the government who argued that the statutory definition was fully incorporated into the guideline because the defendant's conviction for unlawful possession of a firearm was an aggravated felony under the statute but not under the guideline. *See Reyna-Espinosa,* 117 F.3d at 827-28. The defendant argued that the "See cite" did not indicate an intent to incorporate, especially where the language in the commentary was specific and exclusive in its reference to enumerated felonies representing only 5 of 21 paragraphs in the definition of aggravated felony found at § 1103(a)(43). *Id.* at 829. The court agreed, finding that the statutory definition was not incorporated and that the defendant's sentence could not be enhanced. *Id.* at 830.

We agree with the weight of authority that neither the "See cite" nor the structure of U.S.S.G. § 2L1.2 indicates an intent to incorporate § 1326 or the definitions in § 1101 into the guideline. The guideline, including its definition of "aggravated felony," stands independent of the statute and must be applied irrespective of differences between the definitions.

B

The appellant argues that even if we interpret the guideline's definition to be different than the statutory definition, the guideline's definition must nonetheless give way. First, appellant contends that inconsistent definitions create a conflict between statute and the guideline that must be resolved in the statute's favor. However, we do not believe that these different definitions are in

conflict. A conflict could arise if application of the guideline resulted in violation of the statute, as where the sentence arrived at by application of the guideline exceeded the statutory maximum. For example, if in this case Lazo-Ortiz's sentence was longer than the ten years allowed for commission of non-aggravated felonies (as defined by the statute), then we would have a conflict and the statute would trump the guideline. Barring that hypothetical situation, we see no conflict.

Second, Lazo-Ortiz urges us to follow the Ninth Circuit and to hold that the "See cite" in the guideline causes an ambiguity as to the applicability of the November 29, 1990 effective date provision that must be resolved in favor of the defendant. *See United States v. Fuentes-Barahona,* 111 F.3d 651, 653 (9th Cir.1997). The "rule of lenity" requires that actual ambiguities in criminal statutes, including sentencing provisions, be resolved in favor of criminal defendants. *See United States v. Trout,* 68 F.3d 1276, 1280 (11th Cir.1995). However, because of our interpretation of § 2L1.2, there is no ambiguity and the rule of lenity does not apply.[3]

V

For the foregoing reasons, the sentence imposed by the district court was proper and its judgment is AFFIRMED.

---

[3]We also note that *Fuentes-Barahona* appears to be inconsistent with the Ninth Circuit's subsequent opinion in *United States v. Rios-Favela,* 118 F.3d 653 (9th Cir.1997). There, the court addressed the incorporation of the statutory definition into § 2L1.2 and concluded that "some offenses may not count as aggravated felonies under the statute, but nonetheless trigger the adjustment." *Id.* at 657.