UNITED STATES of America, Appellee,

v.

Bentley Washington WESTCOTT, also known as Barrington Glen Morrison, Defendant–Appellant.

Docket No. 97–1451.

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1998.

Decided Nov. 3, 1998.

---

Robert E. Nicholson, Brooklyn, New York, for Defendant–Appellant.

Mary Jo White, United States Attorney for Southern District of New York (Steven P. Heineman, Dietrich L. Snell, Assistant United States Attorneys, New York, New York), for Appellee.

Before: FEINBERG, JACOBS and SACK, Circuit Judges.

SACK, Circuit Judge:

Bentley Washington Westcott appeals from the judgment of the United States District Court for the Southern District of New York (Sotomayor, *J.*) convicting him, pursuant to his guilty plea, of violating 8 U.S.C. § 1326 by reentering the United States without permission after having been deported, sentencing him to sixty months' imprisonment and three years' supervised release, and imposing a $50.00 special assessment.

At the time of his plea, the district court informed Westcott that he faced a maximum sentence of fifteen years' imprisonment under 8 U.S.C. § 1326(b)(2). Subsequently, as a result of authority called to the court's attention by Westcott, the court determined that he was subject not to § 1326(b)(2)'s fifteen year maximum but instead to § 1326(b)(1)'s five year maximum. *See United States v. Westcott*, 966 F.Supp. 186, 191–92 (S.D.N.Y.1997). Westcott contends that the district court thereby violated Fed. R.Crim.P. 11(c)(1) by failing to inform him correctly, prior to accepting his guilty plea, of the maximum sentence he faced.

Westcott's second argument challenges the district court's interpretation of § 2L1.2(b)(2) of the United States Sentencing Guidelines. Under the applicable version of that Guideline, sentencing courts are required to increase the offense level for a violation of § 1326 by sixteen levels if the defendant has been convicted of an "aggravated felony" prior to his deportation and subsequent reentry. Westcott contends that the district court erred in determining that his 1988 conviction for first-degree robbery under New York state law triggered this enhancement.

We affirm the judgment of the district court.

## I. BACKGROUND

The few facts pertinent to this appeal are not in dispute. Westcott, a Jamaican national, first entered the United States in October 1974. On May 17, 1988, a New York state court convicted him of robbery in the first degree, which is defined by New York statute as "forcibly steal[ing]" property. N.Y. PENAL LAW § 160.15 (McKinney 1988). The court imposed a sentence of five and one-half to eleven years' imprisonment. After serving less than five years, Westcott was paroled and transferred into the custody of the Immigration and Naturalization Service. On May 20, 1993, he was deported to Jamaica.

Undaunted, Westcott reentered the United States in March 1994 using a falsified Jamaican passport. Within a year, he was arrested twice, on firearms and narcotics charges. Westcott's parole from his 1988 robbery conviction was therefore revoked.

On August 23, 1996, a federal grand jury issued a one count indictment charging Westcott with violating 8 U.S.C. §§ 1326(a) and (b)(2) by reentering the United States without the permission of the Attorney General (§ 1326(a)) after having been arrested and deported subsequent to the commission of an "aggravated felony" (§ 1326(b)(2)). On December 5, 1996, Westcott came before the district court to plead guilty to this charge. Before accepting his plea, the district judge

informed Westcott that § 1326(b)(2) carried a maximum sentence of fifteen years' imprisonment, that his actual sentence would be determined in accordance with the Sentencing Guidelines, that the Government calculated the applicable Guideline range to be from seventy to eighty-seven months, and that he would not be permitted to withdraw his plea were the actual sentence to be outside of the predicted range. Westcott indicated that he understood.

Less than a month later, in a one page letter to the district court dated December 30, 1996, Westcott argued in substance that he could not be, or should not have been, prosecuted under § 1326(b)(2), which applies only to aliens deported after committing an "aggravated felony." He asserted that robbery in the first degree, the crime attributed to him in the indictment and that he acknowledged during his plea allocution, did not come within the applicable definition of "aggravated felony" at the time he committed and was convicted of it. In support, he cited, without elaboration, *United States v. Gomez–Rodriguez*, 77 F.3d 1150 (9th Cir.1996), later affirmed en banc, *United States v. Gomez–Rodriguez*, 96 F.3d 1262 (9th Cir.1996).

In the *Gomez–Rodriguez* panel decision, the Ninth Circuit held that the phrase "aggravated felony," as used in § 1326(b)(2), did not include crimes of violence, other than murder, that occurred prior to November 29, 1990. 77 F.3d at 1152–53. The panel reached that conclusion after examining 8 U.S.C. § 1101(a)(43), the statute providing the definition of "aggravated felony" as that phrase is used in § 1326(b)(2). *Id.* at 1152–53. Prior to passage of the Immigration Act of 1990 (the "Immigration Act"), § 1101(a)(43)'s definition of "aggravated felony" was limited to murder, certain drug and firearm trafficking crimes, and attempts and conspiracies to commit these crimes. *See id.* at 1152 (quoting Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7342, 102 Stat. 4181, 4469–70 (1988)). In 1990, section 501(a) of the Immigration Act expanded this definition to include, *inter alia,* crimes of

violence, as defined by 18 U.S.C. § 16, for which a sentence of at least five years was imposed. *See id.* (citing Immigration Act of 1990, Pub.L. No. 101–649, § 501(a), 104 Stat. 4978, 5048 (1990)). The expanded definition was subject, however, to an effective date provision stating that "[t]he amendments made by subsection (a) shall apply to offenses committed on or after the date of the enactment of this Act [November 29, 1990]." Pub.L. No. 101–649, § 501(b), 104 Stat. at 5048.[1] The Ninth Circuit therefore concluded that the expansion of § 1101(a)(43)'s coverage did not apply retroactively to felonies committed prior to November 29, 1990. *See* 77 F.3d at 1151.

Having drawn the district court's attention to this decision in his letter, Westcott asked the court to "do what is just, fair and proper." He did not ask to withdraw his plea. In response, the district court invited counsel for the parties to brief and argue the issue Westcott had raised, which they did.

In an opinion dated April 30, 1997, *United States v. Westcott,* 966 F.Supp. 186 (S.D.N.Y. 1997), on the issue of whether the effective date provision's reference to "offenses committed on or after [November 29, 1990]" depended on the date of the alleged "aggravated felony" or the date of the § 1326 violation, and therefore whether Westcott's 1988 robbery conviction constituted an "aggravated felony" for purposes of § 1326(b)(2), the district court found that the relevant statutes, their history, and the authorities interpreting them left the law ambiguous. *Id.* at 189–91. Judge Sotomayor therefore applied the rule of lenity, "requir[ing] the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply." *Id.* at 191 (quoting *United States v. Canales,* 91 F.3d 363, 367 (2d Cir.1996) (internal quotation marks omitted)). The court concluded, as Westcott had urged, that his 1988 robbery conviction was not an "aggravated felony" within the meaning of the statute. *Id.* at 191–92. Thus, the fifteen year maximum sentence provided by

---

1. Subsequent to Westcott's indictment in the present case, Congress amended § 1101(a)(43) to provide that its definition of "aggravated felony" applies without regard to the date of the offense.

*See* Omnibus Consolidated Appropriations Act of 1997, Pub.L. No. 104–208, § 321(b), 110 Stat. 3009–628 (1996).

§ 1326(b)(2) did not apply and the five year maximum sentence under § 1326(b)(1) did. *See id.*

The district court then considered U.S.S.G. § 2L1.2, which is applicable to all convictions under § 1326. It requires that the sentencing judge increase the defendant's offense level by sixteen levels "[i]f the defendant previously was deported after a conviction for an aggravated felony." U.S.S.G. § 2L1.2(b) (1991). This raised the question of whether Westcott's conviction for first-degree robbery in 1988, held not to be an "aggravated felony" under § 1326(b)(2) because the date of the conviction preceded the effective date of the amendment of the definition of "aggravated felony" applicable to the statute, was nonetheless an "aggravated felony" under § 2L1.2(b)(2). The court held that it was, noting that Application Note 7 to § 2L1.2 defines "aggravated felony" to include "any crime of violence (as defined in 18 U.S.C. § 16 ... ) for which the term of imprisonment imposed ... is at least five years.... *See* 8 U.S.C. § 1101(a)(43)," U.S.S.G. § 2L1.2, comment. (n.7) (1991), and that Westcott's 1988 robbery conviction plainly fit that definition. *Westcott*, 966 F.Supp. at 192–93. The court found, moreover, that nothing in § 2L1.2 or Application Note 7 suggested any intent to incorporate into the Guidelines' definition of "aggravated felony" the November 29, 1990 effective date applicable to the statutory definition of the same phrase. *Id.*

At Westcott's subsequent sentencing, on May 28, 1997, the district court adopted the Guidelines calculations set forth in the Presentence Report ("PSR"), finding a base offense level of eight under U.S.S.G. § 2L1.2, a sixteen level enhancement for the prior aggravated felony conviction under U.S.S.G. § 2L1.2(b)(2), and a three level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b)(2). In addition, the district court departed downward one level because of Westcott's agreement not to oppose deportation. Westcott's resulting net offense level of twenty, when combined with his criminal history classification in Category V, earned him a sentencing range of sixty-three to seventy-eight months. Recognizing that § 1326(b)(1) provided a maximum sentence of five years, however, the district court imposed a sentence of sixty months' imprisonment.

Westcott filed a timely notice of appeal.

## II. DISCUSSION

Westcott raises two issues on appeal. First, he contends that the district court violated Fed.R.Crim.P. 11(c)(1) by failing to inform him, at the time of his plea, that the correct maximum penalty he faced was five rather than fifteen years, and therefore that this Court should vacate his conviction and remand for trial. Westcott asserts in the alternative that the district court misinterpreted the Sentencing Guidelines by determining that his 1988 robbery conviction constituted an aggravated felony conviction for purposes of U.S.S.G. § 2L1.2(b)(2), and that the Court therefore should vacate his sentence and remand for resentencing. Neither of these arguments is persuasive.

### A. *District Court's compliance with Fed. R.Crim.P. 11*

■ On December 5, 1997, Westcott pled guilty to a one-count indictment charging him with illegal reentry after previously having been deported subsequent to the commission of an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and (b)(2).[2] Prior to accepting his plea, the district court informed Westcott that he faced a maximum sentence of fifteen years' imprisonment under § 1326(b)(2), that the Government calculated his guideline range to be from seventy to eight-seven months' imprisonment, and that the court was not bound by the Government's estimate.

Subsequent to the entry of his plea, Westcott drew the court's attention to the question of whether his prior robbery conviction properly could be considered an "aggravated felony" under § 1326(b)(2) in light of the

---

**2.** Section 1326(b) does not create a criminal offense separate from § 1326(a); it is a sentence enhancement provision. *See United States v.*

*Cole*, 32 F.3d 16, 18 (2d Cir.), *cert. denied*, 513 U.S. 993, 115 S.Ct. 497, 130 L.Ed.2d 407 (1994).

effective-date limitation applicable to the underlying definition of that term found in 8 U.S.C. § 1101(a)(43). In the end, the court was persuaded by Westcott and determined that his robbery conviction should not be considered an "aggravated felony" within the meaning of § 1326(b)(2). The Court found instead that he was subject to the five year maximum sentence provided by § 1326(b)(1) for defendants whose deportation and illegal reentry occurred after the commission of a non-aggravated felony. *Westcott,* 966 F.Supp. at 191–92.

An unintended consequence of this change of position was that it rendered inaccurate the district court's warning to Westcott, at the time of his plea allocution, that he faced a maximum sentence of fifteen years' imprisonment. The court was not asked to, and did not, reopen the plea hearing in order to correct this inaccuracy.

■ Fed.R.Crim.P. 11(c)(1) requires a court to inform the defendant of, and ensure that the defendant understands, the maximum possible penalty that he faces prior to accepting his guilty plea. This disclosure requirement, along with others contained in Rule 11, serves to ensure that guilty pleas are made voluntarily and with knowledge of the alternatives. *See United States v. Renaud,* 999 F.2d 622, 624 (2d Cir.1993). Because of the significance of this function, we generally require strict adherence to Rule 11's mandate. *See id.* (citing *United States v. Rossillo,* 853 F.2d 1062, 1065–66 (2d Cir. 1988); *United States v. Gonzalez,* 820 F.2d 575, 578 (2d Cir.1987) (per curiam); *United States v. Journet,* 544 F.2d 633, 636 (2d Cir.1976)).

Although the Government has not appealed the district court's sentencing of Westcott under the five year maximum provision of 8 U.S.C. § 1326(b)(1), it nonetheless argues that the district court was right when, in the course of accepting Westcott's guilty plea, it found that § 1326(b)(2) applied and therefore instructed him that he faced a fifteen year maximum, and wrong in its subsequent opinion holding to the contrary that the five year maximum of § 1326(b)(1) controlled. Because the court rightly advised Westcott of the maximum sentence at the plea hearing,

the Government insists, the court committed no error under Rule 11(c)(1).

■ We need not address this knotty issue or the division of authority in other circuits that it has engendered. We hold that even if the district court wrongly advised Westcott as to his maximum sentence at his plea hearing, the error was harmless under Rule 11(h).

■ Fed.R.Crim.P. 11(h) provides: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." It was enacted "to make clear that guilty pleas 'should not be overturned, even on direct appeal, when there has been a minor and technical violation of Rule 11 which amounts to harmless error.'" *United States v. Ferrara,* 954 F.2d 103, 106 (2d Cir.1992) (quoting 1983 Advisory Committee Note to Fed.R.Crim.P. 11); *see also United States v. Basket,* 82 F.3d 44, 48–49 (2d Cir.1996) (describing and explaining the history of the adoption of the rule).

The only possible adverse impact on Westcott of the district court's change of position that we can perceive would have arisen if he had pled guilty as a result of the fifteen year maximum of which he was informed at his plea hearing although, had he been correctly advised of the five year maximum at the time, he would have chosen to stand trial. In other words, had Westcott known that, given the maximum sentence he could receive, he had little if anything to lose by going to trial, he would not have pled guilty. *Cf. Renaud,* 999 F.2d at 625 ("[I]f the defendant wished to withdraw the plea of guilty upon learning of the correct maximum" because he had been advised of a maximum that was *understated,* "the district court should give him the opportunity to do so."). But if Westcott had been misled by the plea allocution, once he learned the shorter maximum applied he surely would have asked the district court to permit him to withdraw his plea. Despite ample opportunity, he did not do so: not in response to receipt of the opinion, not at his subsequent sentencing hearing, and never

thereafter.[3] Not until his appeal did West-cott so much as hint at a desire to withdraw his plea and stand trial, and then only by two conclusory references at the end of his brief. Thus, "it cannot be said" on the basis of the record below "that the district court's error in stating the maximum ... had any effect whatever on [Westcott's] decision to plead guilty." *Id.; see also Basket*, 82 F.3d at 49 (error in plea allocution harmless in part because defendant "could have moved to withdraw his plea"); *cf. Long v. United States*, 883 F.2d 966, 968–69 (11th Cir.1989) (per curiam) (where defendant pled guilty having been advised of twenty year maximum penalty if probation were revoked, but actual maximum was ten years, mistaken advice could not have induced guilty plea).

Our conclusion is buttressed by the observation that, at his plea hearing, Westcott was not only informed of what the court then thought his maximum sentence to be, but also was advised of the applicable sentencing range under the Guidelines. He was told that, although he was subject to a maximum sentence of fifteen years, the likely sentence under the Guidelines was 70 to 87 months. Because of the court's revised views as to the applicable law, the maximum sentence turned out to be five years, but the Guidelines range according to the PSR was sixty-three to seventy-eight months. The contrast between the two maximum sentences is thus tempered by the closeness between the Guidelines range of which Westcott was informed at his plea hearing and the Guidelines range and maximum sentence to which he was ultimately subjected. The naked fifteen year/five year difference in maximum sentences of which Westcott now complains was never so starkly presented to him.

Finally, Westcott's is an atypical case. In the usual case, the defendant complains that he was given a punishment that was greater than the one of which he was informed during the plea allocution. *See, e.g., Renaud*, 999 F.2d at 623–24; *United States v. Khan*, 857 F.2d 85, 85 (2d Cir.1988), *modified*, 869 F.2d 661 (2d Cir.1989), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 682, 112 L.Ed.2d 674 (1991); *Journet*, 544 F.2d at 634–35. In that circumstance, Rule 11(c)(1) acts to prevent the accused from being advised of the harshest possible penalty that awaits him if he pleads guilty, only to discover upon sentencing that his actual punishment exceeds that upon which he based his decision to forgo his right to trial.

In the present case, by contrast, Westcott complains that he was warned of consequences to a guilty plea that were *greater* than those he eventually faced. Although the argument in both situations is that, but for the misinformation, the defendant would not have pled guilty, we are less troubled where as here the defendant at his own instance finds himself in a somewhat better position than he expected from the allegedly mistaken allocution, than where a guilty plea puts the defendant in a worse position than the court previously told the defendant was possible. The wrong done to the happily surprised defendant is ordinarily less severe. In this situation we are particularly comfortable in requiring something more than the defendant's insistence that reversal is "automatic." The defendant must demonstrate that the misinformation mattered. No such showing has been made.

■ Of course, whether an error was in fact harmless because it did not prejudice the defendant "must be resolved on the basis of the record, not on the basis of speculative assumptions about the defendant's state of mind." *Basket*, 82 F.3d at 49 (citing 1983 Advisory Committee Notes to Fed.R.Crim.P. 11). But there is nothing in the record here to suggest that, had Westcott known at his plea hearing that only the five year maximum sentence applied, he would have acted differently. And there is nothing speculative about our deduction that had he been misled into pleading guilty by the court's statement at the plea hearing, upon learning of that mistake, he would have sought in the district court to withdraw his guilty plea and proceed

---

**3.** Westcott's decision not to seek to withdraw his guilty plea is understandable in light of the apparent paucity of grounds he had on which to defend himself at trial, given the apparent diffi- culty of rebutting the facts of his presence in the United States, his previous deportation and his earlier conviction for first-degree robbery.

to trial. The error committed by the court below during the plea allocution, if error it was, was harmless.

B. *Interpretation of U.S.S.G. § 2L1.2(2)(b)*

 Westcott contends also that the district court erred when it decided that the same conviction for first-degree robbery that the court held *was not* an "aggravated felony" for purposes of sentencing under § 1326(b)(2) *was* an "aggravated felony" for purposes of U.S.S.G. § 2L1.2(b)(2), the Sentencing Guideline applicable to convictions under 8 U.S.C. § 1326. We review this challenge to the district court's interpretation of the Sentencing Guidelines *de novo. See, e.g., United States v. Adler,* 52 F.3d 20, 21 (2d Cir.1995) (per curiam).

As with the question of the propriety of the plea allocution under Rule 11(c)(1) disposed of above, we could avoid this issue were we to conclude, as the government invites us to, that the district court was right when, for purposes of the plea allocution, it decided that the amendment to the definition of "aggravated felony" in § 1101(a)(43) applied to Westcott's pre-November 29, 1990 conviction for first-degree robbery. Although this would resolve the potential conflict between the definition applicable to § 1326 and that contained in the corresponding Guideline, again we decline to do so. Instead, we assume without deciding that the district court was correct in concluding that Westcott's first-degree robbery conviction was not an "aggravated felony" for purposes of § 1326(b)(2).

The sentencing structure for violations of 8 U.S.C. § 1326 is straightforward. Subject to the maximum-sentence limitations set forth in the underlying statute, sentences for convictions under § 1326 are determined in accordance with U.S.S.G. § 2L1.2(a), which provides a base offense level of 8. The base offense level, in turn, is subject to enhancement based on the presence of certain specified offense characteristics. At the time of both Westcott's violation of § 1326 and his sentencing, the applicable version of § 2L1.2 provided:

> (1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.
>
> (2) If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels.

§ 2L1.2(b) (1991).

Application Note 7 to § 2L1.2, in effect at the time of Westcott's violation of § 1326 and at the time of his sentencing, sets forth the definition of "aggravated felony" as that term is used in § 2L1.2(b):

> "Aggravated felony," ... means murder; any illicit trafficking in any controlled substance (as defined in 21 U.S.C. § 802), including any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2); any illicit trafficking in any firearms or destructive devices as defined in 18 U.S.C. § 921; any offense described in 18 U.S.C. § 1956 (relating to laundering of monetary instruments); *any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years;* or any attempt or conspiracy to commit any such act. The term "aggravated felony" applies to offenses described in the previous sentence whether in violation of federal or state law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years. *See* 8 U.S.C. § 1101(a)(43).

U.S.S.G. § 2L1.2, comment. (n.7) (1991) (emphasis added).

Among the crimes that Application Note 7 thus identifies as "aggravated felonies" are crimes of violence, as defined by 18 U.S.C. § 16, that resulted in a sentence greater than five years. First-degree robbery under New York state law is such a crime because "under the New York definition, one element of first-degree robbery is 'forcibly' stealing property." *United States v. Galicia–Delgado,* 130 F.3d 518, 520 (2d Cir.1997) (*attempted* robbery in the first degree under New

York law is a crime of violence as defined in 18 U.S.C. § 16 and, therefore, also is an "aggravated felony" within the meaning of § 2L1.2(b)(2) when a sentence in excess of five years' imprisonment is imposed). Because Westcott was convicted of first-degree robbery prior to his deportation and sentenced to five and one-half to eleven years' imprisonment, he was convicted of an "aggravated felony" for purposes of Application Note 7 and U.S.S.G. § 2L1.2(b)(2).

The structure and terms of the Guideline, unlike those of the statute, do not suggest that only "crime[s] of violence [ ] as defined in 18 U.S.C. § 16" committed after November 29, 1990 may be taken into account. The ambiguity that bedevils 8 U.S.C. § 1326(b)(2) and the related definition of aggravated felony in § 1101(a)(43), therefore, does not seem to be present in the Application Note—but for the unexplained reference to § 1101(a)(43) in the final phrase of the Note.

According to Westcott, the language "*See* 8 U.S.C. § 1101(a)(43)" at the conclusion of Application Note 7 requires a contrary result. He argues that it serves to incorporate the November 29, 1990 effective date of the amendment of § 1101(a)(43), which expanded the term "aggravated felony" to include the type of crime of which he was convicted, as an effective date for Application Note 7's own definition of the term "aggravated felony." Thus he reads the words in Note 7,

> "Aggravated felony," as used in subsection (b)(2), means ... any crime of violence (as defined in 18 U.S.C. § 16 ... ) for which the term of imprisonment imposed ... is at least five years ... *See* 8 U.S.C. § 1101(a)(43).

to mean,

> "Aggravated felony," as used in subsection (b)(2), means ... any crime of violence (as defined in 18 U.S.C. § 16 ... ) for which the term of imprisonment imposed ... is at least five years, *effective only after the date a similar amendment to 8 U.S.C. § 1101(a)(43) became effective, November 29, 1990.*

According to Westcott's analysis, the introductory signal "*see*" is transformed from an indicator of clear support for a proposition, *cf. The Bluebook: A Uniform System of Citation* § 1.2(a), at 23 (15th ed. 1991), into a shorthand method of incorporating an entire statutory framework. The Application Note's "*see*" reference simply will not bear the weight that Westcott seeks to place upon it.

The language in the definition of "aggravated felony" was indeed borrowed from the amended 1991 version of 8 U.S.C. § 1101(a)(43), which by that time included crimes of violence such as Westcott's in the definition of "aggravated felony." It made eminent sense for the Sentencing Commission therefore to refer the reader to the source of the language in the Guideline. Indeed, it would have been odd for the Commission not to have done so. But it did no more than that.

Construing the citation to § 1101(a)(43) not as a reference to but as an incorporation of § 1101(a)(43) and the definition of "aggravated felony" it contains, moreover, renders the full-length definition of the term that precedes the citation mere surplusage, and misleading surplusage at that. If incorporation was the Commissioners' intent, surely they would have said so.

■ We are not troubled by finding the words "aggravated felony" to have a meaning in the Guideline different from that which they have in the substantive statute to which the Guideline relates. Despite the parallels between the statutory and Guidelines frameworks, § 2L1.2 "was intended to be applied without reference to the specific subsections of the underlying statute." *United States v. Munoz–Cerna,* 47 F.3d 207, 211 (7th Cir. 1995). There is no indication in § 2L1.2(b) that its application is predetermined by a court's conclusion with regard to § 1326. *See id.; cf. United States v. Fuentes–Barahona,* 111 F.3d 651, 653 n. 3 (9th Cir.1997) (agreeing with the "narrow proposition" that there is no symmetrical relationship). On the contrary, the language and structure of § 2L1.2(b) give every indication that courts are required to conduct an independent analysis to determine whether either of the specified offense characteristics are present. *See id.; accord United States v. Lazo–Ortiz,* 136 F.3d 1282, 1285 (11th Cir.1998), *cert. de-*

nied, —— U.S. ——, 119 S.Ct. 131, —— L.Ed.2d —— (1998); *United States v. Rios–Favela*, 118 F.3d 653, 657 n. 3 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 730, 139 L.Ed.2d 668 (1998); *United States v. Eversley*, 55 F.3d 870, 872 (3d Cir.1995); *United States v. Frias–Trujillo*, 9 F.3d 875, 877 (10th Cir.1993).

Had the Sentencing Commission intended § 2L1.2 merely to track the applicable subsection of § 1326, it could have achieved that end more reasonably by imposing variable base offense levels in accordance with whether 8 U.S.C. §§ 1326(a), (b)(1), or (b)(2) were involved. It showed no such intent. As the Seventh Circuit has observed:

> The Congress apparently preferred to make the fifteen-year sanction provided by [the Immigration Act] prospective in application, but it was content in approving the guideline to employ the normal pattern and to permit the provision to have retrospective effect in the sense that all previous felonies could be brought within its scope.

*Munoz–Cerna*, 47 F.3d at 212.

■ In holding that the definition of "aggravated felony" set forth in Application Note 7 to U.S.S.G. § 2L1.2 incorporates neither the definition of the same language contained in 8 U.S.C. § 1101(a)(43) nor that provision's effective-date limitation, we join the other circuits that have considered and rejected the view espoused by Westcott. *See, e.g., United States v. Cazares–Gonzalez*, 152 F.3d 889, 890–91 (8th Cir.1998) (rejecting view that Application Note 7 arguably indicates an intent to incorporate effective-date limitation on the expansion of § 1101(a)(43)'s definition of aggravated felony); *Lazo–Ortiz*, 136 F.3d at 1284–86 (same); *see also United States v. Longo*, Crim.A. No. 96CR127RSPGJD, 1998 WL 236157, at *10, 11 (N.D.N.Y. May 6, 1998) (Pooler, J.) (same); *cf. United States v. Reyna–Espinosa*, 117 F.3d 826, 829–30 (5th Cir.1997) (holding that Application Note 7's citation to

§ 1101(a)(43) does not incorporate the definitions contained in that section).

The only significant disagreement with this approach,[4] and thus the principal authority upon which Westcott bases his argument, is contained in the Ninth Circuit's decision in *United States v. Fuentes–Barahona*, 111 F.3d 651 (9th Cir.1997). By per curiam opinion, a panel of the Ninth Circuit asserted that Application Note 7's direction to *"see"* § 1101(a)(43) "suggests that the November 29, 1990, effective date for a 'crime of violence' under 8 U.S.C. § 1101(a)(43)(F) should apply to U.S.S.G. § 2L1.2 as well." *Id.* at 652. The court's rationale for this conclusion was that the effective-date limitation was on the books at the time Application Note 7 was drafted in 1991. *Id.* The court then concluded that it was ambiguous whether Application Note 7 intended to incorporate § 1101(a)(43)'s effective date provision and, therefore, applied the rule of lenity. *Id.* at 652–53.

For the reasons set forth above, we disagree. It simply does not follow from the fact that the expanded § 1101(a)(43) definition of "aggravated felon," with its effective date of November 29, 1990, was on the books at the time the Commission drafted Application Note 7, that the *"see"* citation to § 1101(a)(43) in the Application Note incorporates the effective date of the amendment to § 1101(a)(43) as well.

In light of our holding that the citation to § 1101(a)(43) in Application Note 7 does not evidence any intent to incorporate § 1101(a)(43) as the applicable definition but, instead, is meant to indicate the source of the note's free-standing definition, we further conclude that the citation to § 1101(a)(43) gives rise to no ambiguity. Absent such ambiguity, there is no occasion for this Court to apply the rule of lenity as the Ninth Circuit did in *Fuentes–Barahona*, 111 F.3d

---

4. Some courts have construed *United States v. Maul–Valverde*, 10 F.3d 544, 545 & n. 1 (8th Cir.1993), as taking the position that Application Note 7's reference to § 1101(a)(43) incorporated that statute's definition, effective-date limitation and all. *See, e.g., Lazo–Ortiz*, 136 F.3d at 1285;

*Reyna–Espinosa*, 117 F.3d at 829. Although it is not clear that the panel in *Maul–Valverde* intended to convey that impression, the point is irrelevant in light of the Eighth Circuit's unambiguous rejection of that position in its more recent decision in *Cazares–Gonzalez*, 152 F.3d at 891.

at 652–53.[5] The district court correctly rejected Westcott's argument and, accordingly, we affirm.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

---

**5.** We therefore do not reach the government's assertion that the rule of lenity does not apply to the Sentencing Guidelines.