**Hector LEBRON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 00 CV 3772.**

United States District Court, E.D. New York.

May 9, 2003.

Hector Lebron, Pro Se, for plaintiff.

Michelle R.M. Campbell, AUSA, Eddy, for defendant.

### ORDER

GERSHON, District Judge.

*Pro se* petitioner Hector Lebron moves, pursuant to 28 U.S.C. § 2255, seeking to have his sentenced vacated, set aside, or corrected after he pleaded guilty to conspiracy to distribute and possess heroin on December 2, 1998. For the following reasons, the motion is denied.

### BACKGROUND

On December 2, 1998, petitioner pleaded guilty to Count One of an indictment that charged that petitioner and others "... did knowingly and intentionally conspire to distribute and to posses with intent to distribute heroin, a Schedule I narcotic drug controlled substance, in violation of Section 841(a)(1) of Title 21 of the United States Code. (Title 21, United States Code, Sections 846 and 841(b)(1)(A)(i); Title 18, United States Code 3551 *et seq.*)" Section 841(b)(1)(A)(i) makes it a crime, punishable by a term of imprisonment of not less than ten years and not more than life in prison, to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin.

### Sentencing

At the time of sentencing, petitioner requested an evidentiary hearing with respect to the amount of heroin that would be attributable to him. Four witnesses testified as to petitioner's role in the offense and the quantity of heroin he distributed over time. Cooperating witnesses Maurice Pfeiffer, John Romero and Juan Mercedes and case agent Tom McNally testified. Based on that testimony, the court found that the relevant conduct dated back to 1989 and that petitioner's drug dealing from that period was part of the same course of conduct for purposes of relevant conduct under the Sentencing Guidelines. Although the court was not satisfied that petitioner was acting as a partner with Willie Torres so as to warrant a supervisor or leader upward adjustment of three or four levels (Sentencing Transcript ("Sent.") at 3), it did find that petitioner's conduct warranted a two level upward adjustment for his role as a manager, because it was clear that petitioner had others working for him. Sent. at 2.

The court also found that Mr. Pfeiffer's testimony that petitioner was involved in more than 18 kilos of sales of heroin was credible, as was Pfeiffer's testimony that sales of 9.2 kilos were attributable to petitioner for the 1995–1996 period. The court found that petitioner himself acknowledged that he distributed 600–700 grams of heroin during the 1997–1998 period. However, the court noted that the government only had requested that the

petitioner be attributed more than 3 kilos of sales. The court stated, "[s]o even if I were to substantially discount the 18 kilos and the 9 kilos, there's no question in my mind that the government has established that this defendant has distributed more than 3 kilos, which imposes level 34." Sent. at 4. In total, the court enhanced petitioner's guideline level by two points for his role as a manager and relevant conduct, reduced his level by two points for the global plea, and reduced it three more points for acceptance of responsibility. This resulted in a total offense level of 31 at a criminal history category of II, which meant that the guidelines range was 121 to 151 months. Petitioner was sentenced on July 1, 1999 to 121 months of imprisonment.

### Petitioner's 28 U.S.C. § 2255 Motion

In his original motion papers, filed in this court on June 30, 2000, petitioner raised the following claims: (1) the appeals court made an error by not accepting petitioner's appeal; (2) audiotapes were admitted to the grand jury in error because they were not properly authenticated; (3) Special Agent McNally's statement to the grand jury was false testimony that prosecutors had an obligation to correct; (4) this court made an error by failing to specify the evidence upon which it relied in finding the petitioner responsible for an additional nine kilograms of heroin; (5) this court erred in not accepting petitioner's downward departure request; (6) this court erred in accepting Mr. Pfeiffer's testimony and attributing a manager's role to petitioner and in enhancing petitioner's sentence for relevant conduct; and (7) petitioner's attorney was ineffective because he caused petitioner to plead guilty to a conspiracy in which he had no involvement.

On July 7, 2000, petitioner filed an "Amended 28 U.S.C. § 2255 motion, Motion to dismiss the indictment for outra-geous government conduct and memorandum of law" contesting the evidence that was presented to the grand jury. On December 28, 2000, petitioner filed a "Third Amendment Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255" in which he challenged the manager's role and relevant conduct two point enhancement as a violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and also claimed ineffective assistance of trial counsel for: (1) failure to move to suppress the tapes that were presented to the grand jury; (2) coercing petitioner into pleading guilty against his free will; and (3) not appealing the sentencing decision of this court when counsel promised petitioner that he would. Petitioner claims that, had it not been for counsel's neglect, he would have gone to trial and that counsel's performance undermined the outcome of the proceedings.

### DISCUSSION

### *Plea Agreement Waiver*

■ To begin with, all of petitioner's claims, except his ineffective assistance of counsel claim and his *Apprendi* claim, discussed below, are barred by the terms of his plea agreement. That agreement provides that petitioner "will not file an appeal or otherwise challenge the conviction or sentence" if the court imposes a sentence not greater than 188 months. Petitioner was sentenced to 121 months. Agreements to waive the right to appeal or to file a collateral attack as part of the plea agreement, if knowingly and voluntarily made, have been recognized as valid and enforceable in the Second Circuit. *Garcia–Santos v. United States*, 273 F.3d 506, 508–09 (2d Cir.2001); *Pena v. United States*, 201 F.Supp.2d 231, 233–35 (S.D.N.Y.2002). Petitioner's agreement that he would neither appeal or "otherwise challenge" his conviction clearly applies to

this § 2255 petition. *See Trujillo v. United States*, 1993 WL 227701 at *3 (S.D.N.Y. June 21, 1993), *aff'd mem.*, 33 F.3d 49 (2d Cir.1994). ("Without alleging a constitutional or jurisdictional violation, it is an anathema to allow one who has voluntarily waived his right to appeal to attack the sentence collaterally.") Furthermore, on February 15, 2000, the Court of Appeals for the Second Circuit dismissed petitioner's appeal as barred by the terms of the plea agreement and, therefore, this issue has been ruled upon.

However, in *Frederick v. Warden*, 308 F.3d 192 (2d Cir.2002), the Court of Appeals for the Second Circuit recently held that a waiver in a plea agreement of the right to appeal or collaterally attack a guilty plea was unenforceable to the extent that it would preclude "an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." *Id.* at 195. The full implications of this decision are unclear; however, since all of petitioner's claims, except the ineffective assistance of counsel claim and the *Apprendi* claim, do not attack the validity of the process by which the plea was obtained, those claims are barred by the terms of the plea agreement. Insofar as *Frederick* may provide a basis on which petitioner's ineffective assistance of counsel claims and his *Apprendi* claim are not barred by the terms of his plea agreement, those claims are addressed below.

### Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, petitioner must show both that his counsel's performance fell below the objective standard of reasonableness dictated by prevailing professional norms and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under the first prong, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

To establish the second, "prejudice" prong, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" in this context is one that undermines confidence in the outcome of the proceeding. *Id.* at 694, 104 S.Ct. 2052. In the plea context, the second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Petitioner claims that his trial counsel's performance was deficient because: (1) he failed to move to suppress the wiretap tapes that were presented to the grand jury because they were not authenticated; (2) he coerced petitioner into pleading guilty against his free will; and (3) he did not appeal the sentencing decision of this court when he promised petitioner that he would. Petitioner claims that, had it not been for counsel's neglect, he would have gone to trial and that counsel's performance undermined the outcome of the proceedings.

(1) *Evidence Submitted to the Grand Jury*

■ Petitioner claims that his counsel was ineffective for failing to move to sup-

press the tapes of the wiretaps on a cellular telephone used by William Torres and his brother because they were not authenticated before Agent McNally testified as to their content before the grand jury. Petitioner claims that, had counsel moved to suppress McNally's testimony, he would not have been indicted and would not have pleaded guilty.

Insofar as petitioner is claiming that his counsel was ineffective for failing to move to suppress the testimony of Agent McNally on the grounds that his testimony was not authenticated in accordance with the Federal Rule of Evidence 901, the Federal Rules of Evidence, other than with respect to privileges, do not apply to grand jury proceedings. Fed.R.Evid. 1101(d)(2). Thus, his counsel was not ineffective for failing to raise a claim based on authentication of evidence in the grand jury proceeding.

■ Insofar as petitioner is claiming that the tapes themselves should not have been presented to the grand jury, "[a] grand jury may make use of information obtained through a wiretap unless it is clear that the wiretap was illegal, such as when there is a government concession that the surveillance was unlawful, or there is 'patent' illegality 'such as, for example, when no prior court order was obtained, or when the unlawfulness of the Government's surveillance has been established in a prior judicial proceeding.'" *U.S. v. Miller,* 116 F.3d 641, 662 (2d Cir. 1997) (*quoting In re Persico,* 491 F.2d 1156, 1161 (2d Cir.) *cert. denied* 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974)). Absent such clear illegality, the grand jury is entitled to consider wiretap evidence. Thus, since petitioner does not challenge the validity of the affidavits supporting the wiretap order and makes no claim that the wiretaps were illegal, the sworn testimony of Agent McNally concerning the contents

of the tapes and the conversations on them was properly before the grand jury and petitioner's counsel was not ineffective for failing to challenge the presentation of the tapes to the grand jury.

### (2) *Coercing Petitioner to Plead Guilty*

■ Petitioner claims that his attorney coerced him into pleading guilty against his own free will, but with the exception of the facts surrounding his ineffectiveness claim for counsel's failure to file an appeal and counsel's failure to challenge the grand jury evidence, discussed under claims (1) and (3), petitioner provides no facts to support this claim. In any event, this claim is belied by petitioner's own statements at the plea, which were made under oath, and this court's findings. As the Supreme Court has held:

> [T]he representations of the defendant ... as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (citations omitted). In this case, petitioner's sworn statements indicate that he understood the charges against him, that he was giving up his right to a trial, and that he was making the plea knowingly and voluntarily. Petitioner made the following sworn statements at his plea:

> Court: (After reading the indictment) Do you understand the nature of the charge to which you are offering to plead guilty?

Defendant: Yes.

* * *

Court: Now, if you plead guilty and I accept the plea, you give up your constitutional right to a trial and the other rights I've just described. There will be no further trial of any kind; do you understand that?

Defendant: Yes.

Court: Are you ready to enter a plea to Count One?

Defendant: Yes.

Court: And what is your plea to Count One, guilty or not guilty?

Defendant: Guilty.

Court: Are you making the plea of guilty voluntarily and of your own free will?

Defendant: My own free will.

Court: Has anyone threatened or forced you to plead guilty?

Defendant: No.

Court: Other than the written agreement that you have with the government, has anyone made any promise to you that caused you to plead guilty?

Defendant: No.

Court: Has anyone made any promise to you as to what your sentence will actually be?

Defendant: No.

Court: Did you commit the offense?

Defendant: Yes.

Court: In your own words describe what you did.

Defendant: I was distributing heroin with William Torres.

Court: When and where?

Defendant: (After defendant confers with counsel) In 1997 in Brooklyn.

Court: And did you have an agreement with Mr. Torres to distribute heroin, did you have an understanding with him that you would work together to do this?

Defendant: Yes.

Court: Do you still wish to plead guilty?

Defendant: Yes.

* * * * *

Court: Mr. Lebron, I am satisfied that you understand the nature of the charges against you, the consequences of your plea and I'm also satisfied that the plea is made voluntarily and knowingly and that there's a factual basis for it, so I accept your plea of guilty to Count One.

Plea Transcript at 13–15.

In light of these sworn statements, and this court's conclusion that the plea was made voluntarily and knowingly with an understanding of the consequences of the plea, petitioner's conclusory allegations that his attorney coerced him into pleading guilty, without providing any factual basis for that claim, are belied by the record.

### (3) *Failure to File an Appeal*

■ Petitioner claims that his counsel was ineffective for failing to file an appeal of the sentencing decision of this court, which sentenced petitioner to 121 months imprisonment, one month more than the statutory minimum. Petitioner's counsel did in fact file a Notice of Appeal. However, the appeal was dismissed by the Second Circuit.

Moreover, at the plea proceeding, petitioner acknowledged that he was waiving his right to appeal any sentencing decision by this court when he signed the plea agreement. The following colloquy took place:

Court: I'd like to call to your attention one particular aspect of the plea agreement which does bind you because you've agreed to it. It says that

the defendant will not file an appeal or otherwise challenge the conviction or sentence in the event that the court imposes a sentence within or below the range of imprisonment set forth in paragraph two. Now, paragraph two gives a range estimated by the government at 151 to 188; do you understand that?

Defendant: Yes.

Court: And do you understand this provision about filing an appeal and so on?

Defendant: Yes.

Deft's Atty: Perhaps I need to clarify something. It has never been my practice to appeal on a plea because that's what the rules require. In this case I believe that should Your Honor decide against our position, that an appeal may lie regardless of what is said in paragraph two, meaning paragraph two in the plea agreement is an estimate of the government, it is not an estimate we agree with.

Govt. Atty: Your honor, actually the way the agreement is drafted, it does bar the defendant from appealing based on the government's guidelines calculation.

Court: That's correct.

Deft's Atty: Okay. Then we clarify that now.

Court: I think perhaps you need to discuss this with your client because what I've said to your client, he said he understood it. I don't want to say something that's different that he may rely on.

Deft's Atty: If I can just have a minute.

Court: All right. (Whereupon counsel conferred with defendant)

Deft's Atty: Apparently I was the only one who was under the misunderstanding but I have explained to my client that should Your Honor disagree with our position at sentencing and accept the government's version, there can be no appeal and my client does waive his right to an appeal. If the sentence by the Court is within the guidelines set forth in paragraph two of the agreement or below, there can be no appeal.

Court: Correct. All right. You understand that, Mr. Lebron?

Defendant: Yes.

Pleas Transcript at. 10–12.

As discussed earlier, Second Circuit precedent recognizes that agreements to waive the right to appeal or to file a collateral attack as part of the plea agreement, if knowingly and voluntarily made, are valid and enforceable. *See Garcia–Santos*, 273 F.3d at 508–09. Thus, even had a Notice of Appeal not been filed, petitioner could not show that his attorney was ineffective. Petitioner's own statements and his consultation with his counsel during the plea proceeding belie his assertions that he did not knowingly and voluntarily waive his right to appeal.

### Apprendi Claim

Petitioner also claims that his two level enhancement for a manager's role and relevant conduct was imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), decided after petitioner's sentencing on July 1, 1999, because it raised his penalty beyond the prescribed statutory maximum. However, in *Coleman v. United States*, 329 F.3d. 77 (2d Cir. 2003), the Court of Appeals for the Second Circuit held that *Apprendi* does not apply retroactively to motions brought under 28 U.S.C. § 2255.

### CONCLUSION

For the foregoing reasons, the motion for relief under 28 U.S.C. § 2255 is denied

in its entirety. The Clerk of Court is directed to close this case.

As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

**SO ORDERED.**