**UNITED STATES of America, Appellee,**

v.

**John BASKET, Defendant–Appellant.**

**No. 940, Docket 95–1178.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 22, 1996.

Decided April 19, 1996.

---

Carol L. Sipperly, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, and Cathy Seibel, Assistant United States Attorney, New York City, on the brief), for Appellee.

Richard D. Willstatter, White Plains, New York (Green & Willstatter, White Plains, New York, on the brief), for Defendant–Appellant.

Before: NEWMAN, Chief Judge,
LUMBARD and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant John Basket appeals from a judgment entered in the United States District Court for the Southern District of New York convicting him, following his plea of guilty before Charles L. Brieant, *Judge,* of distributing and possessing with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A) (1988 & Supp. II 1990) and 18 U.S.C. § 2 (1994), and of conspiring to do so, in violation of 21 U.S.C. § 846 (1994). He was sentenced principally to 130 months' imprisonment, to be followed by a five-year term of supervised release. On appeal, Basket contends that his conviction should be vacated because in accepting his plea of guilty the district court failed to inquire, as required by Fed. R.Crim.P. 11(d), whether the plea was the result of any promises or any discussions between Basket or his attorney and the government. The government acknowledges both the Rule 11(d) error and its own contribution to that error by failing to call the district court's attention to the omission. For the reasons below, we conclude that the error was harmless.

## I. BACKGROUND

In the summer of 1992, Basket and at least one other person conspired to possess cocaine with intent to distribute it. On August 28, 1992, Basket sold approximately three ounces of cocaine base to an undercover police officer. He was eventually arrested and indicted on the above charges, to which he pleaded guilty on April 19, 1993. Standing alone, these charges subjected Basket to, *inter alia,* a mandatory minimum prison term of 10 years, to be followed by at least five years of supervised release. However, before Basket's plea of guilty, the government filed a prior felony information against him which, under 21 U.S.C. § 841(b)(1)(A), doubled the applicable mandatory minimum penalties.

At Basket's April 19, 1993 plea allocution, the district court asked Basket most of the questions required by Rule 11 of the Federal Rules of Criminal Procedure, but did not inquire whether his plea was "the result of ... promises" or whether his willingness to plead guilty "result[ed] from prior discussions between the attorney for the government and [Basket] or [Basket's] attorney," Fed.R.Crim.P. 11(d). When Basket was sentenced some two years later, he stated that at the time he pleaded guilty he believed there was an oral cooperation agreement between his counsel and the government that would permit him "to cooperate with the[ government] and work to get a letter" pursuant to § 5K1.1 of the federal Sentencing Guidelines ("Guidelines"). (Sentencing Transcript, March 23, 1995 ("Sent.Tr."), at 6.) The government contended that no agreement had been reached at the time of Basket's plea.

In the meantime, on April 22, 1993, three days after Basket pleaded guilty, he and the government entered into a written cooperation agreement ("April 22, 1993 Cooperation Agreement" or "Agreement") stating, *inter alia*, that on April 19, Basket had pleaded guilty to conspiring to distribute crack and cocaine and distributing crack, and that the sentence that could be imposed on him with respect to those charges included a mandatory minimum prison term of 20 years and a supervised-release term of at least 10 years. Basket agreed to cooperate with law enforcement agencies by, *inter alia*, truthfully disclosing all information requested by the government with respect to himself and others, attending meetings, and testifying before the grand jury or at any trial or other court proceeding with regard to such matters. The Agreement, which was in the form of a letter from the Southern District United States Attorney's office to Richard Willstatter, Basket's attorney, and was co-signed by Basket and his attorney, emphasized that the sentence ultimately to be imposed on Basket lay within the sole discretion of the sentencing judge, but stated that

> if it is determined by this Office that John Basket has provided substantial assistance in an investigation or prosecution, and has otherwise complied with the terms of this

agreement, this Office will file a motion, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), advising the sentencing Judge of all relevant facts pertaining to that determination and requesting the Court to sentence John Basket in light of the factors set forth in Section 5K1.1(a)(1)-(5).

(April 22, 1993 Cooperation Agreement at 2.) It also stated that

> [w]ith respect to this matter, this Agreement supersedes all prior, if any, understandings, promises and/or conditions between this Office and John Basket. No additional promises, agreements, and conditions have been entered into other than those set forth in this letter and none will be entered into unless in writing and signed by all parties.

(*Id.* at 5.)

After entering into the April 22, 1993 Cooperation Agreement, the government made several attempts to work with Basket during the course of various investigations, but it eventually concluded that his actual cooperation was limited. As a result, the government declined to send the court a § 5K1.1 letter requesting a reduction of Basket's sentence under that section. However, in consideration of the fact that Basket had cooperated to some extent, the government and Basket entered into a sentencing agreement pursuant to which the government withdrew the prior felony information; that withdrawal had the immediate effect of halving the statutory minimum prison and supervised-release periods applicable to Basket. The sentencing agreement, noting that the final decision on Basket's sentence lay within the discretion of the court, stated that the parties thereby agreed that the applicable range of imprisonment under the Guidelines was 121–151 months and that the government would recommend that Basket be sentenced at the top of that range.

As indicated above, at the sentencing hearing on March 23, 1995, Basket stated that prior to pleading guilty he had believed there was an oral agreement between his counsel and the government that, assuming he cooperated, assured him of a § 5K1.1 letter. The

government stated that there was no cooperation agreement at the time of Basket's plea, though there had been a proffer of information in which the government was interested; the cooperation agreement was entered into three days after Basket's plea of guilty. At the sentencing hearing, the government stated that it declined to make a § 5K1.1 motion because although Basket had cooperated in some respects, he had in one instance obstructed justice. The following colloquy ensued:

> THE COURT: The Court cannot under the case law compel anyone on behalf of the Government to give a 5 K 1 letter.
>
> MR. WILLSTATTER: I hear you. I've gone over with my client the only option he would have would be to move to withdraw his plea and—
>
> THE COURT: I probably wouldn't grant that, because I have a vivid recollection of taking his plea and I have a transcript of his plea which confirms to me that the plea was given with a full understanding of his rights and the possible consequences of pleading guilty. So, the Court ordinarily would not permit him to withdraw his plea and probably sentence him under his existing plea.
>
> MR. WILLSTATTER: What I meant was the only grounds that he would have to allege the Government's failure to give him a 5 K 1 letter is somehow in bad faith and I explained to him that might be very difficult burden for him to carry. Understanding we have not made that motion.
>
> THE COURT: Should I adjourn the matter or do you want to be sentenced at this time?
>
> MR. WILLSTATTER: I think we're ready to be sentenced, my client executed the document.
>
> (Pause.)
>
> MR. WILLSTATTER: All right. The client is prepared to go forward at this time with sentencing.

(Sent. Tr. at 7–8.)

The court noted that the government's withdrawal of the prior felony information had the effect of reducing Basket's mandatory minimum prison term from 240 months to 120 months. Rejecting the government's recommendation for a sentence at the top of the resulting Guidelines imprisonment range of 121–151 months, the court sentenced Basket, as indicated above, to, *inter alia,* a prison term of 130 months.

Basket has appealed. His attorney initially filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asking to be relieved as defense counsel on the ground that there existed no nonfrivolous issue for appeal. The government moved for summary affirmance. This Court denied the government's motion without prejudice, and instructed defense counsel to brief the issue of whether the district court's failure to inquire during the plea allocution, as required by Rule 11(d), as to whether Basket's plea of guilty resulted from any promise or any discussion with the government constituted harmless error. Briefs have now been filed on that issue. For the reasons below, we conclude that the error was harmless.

## II. DISCUSSION

Rule 11(d) of the Federal Rules of Criminal Procedure provides that the district court

> shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

Fed.R.Crim.P. 11(d). The three major purposes of this requirement are

> first ... to make certain that the plea is indeed voluntary; ... second ... to disabuse the defendant of any misconception he may have that anyone but the court has the authority to determine what his sentence will be; and third, to preserve the integrity of the plea by eliminating the basis for a later claim by the defendant that the plea was defective.

*United States v. Gonzalez*, 820 F.2d 575, 579 (2d Cir.1987).

The importance of compliance with Rule 11(d) is well illustrated by Basket's present contention, raised at sentencing, that his understanding at the time of his plea was that if he cooperated the government would, not just could, make a § 5K1.1 motion. Had the district court made the mandated inquiry at the time of the plea hearing, any misunderstanding on the part of Basket could have been avoided.

■ Nonetheless, such an error does not automatically require reversal. Rule 11(h) provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). This provision, added to Rule 11 in 1983, was intended to "make[ ] clear that the harmless error rule of [Fed.R.Crim.P.] 52(a) is applicable to Rule 11." 1983 Advisory Committee Note to Fed. R.Crim.P. 11. Although *United States v. Gonzalez* suggested that harmless-error analysis might not be applicable to a Rule 11(d) error, *see* 820 F.2d at 579 ("failure to make a Rule 11(d) inquiry in this situation [does not] appear to be the kind of Rule 11 violation that the Advisory Committee on Rules considered might constitute harmless error when it proposed the 1983 amendments adding subdivision (h)"), that interpretation, which was not necessary to the outcome of *Gonzalez,* is at odds with the broad language of Rule 11(h) and with the rationale for its adoption.

The language of Rule 11(h) does not suggest that harmless-error analysis was not meant to be applied to a Rule 11(d) error. Rule 11(h) states that the court shall disregard deviations from the procedures required by "this rule," not merely by some of its subdivisions. In recommending the adoption of subdivision (h), the Advisory Committee stated, in part, as follows:

Prior to the [1975] amendments ..., Rule 11 was very brief; it consisted of but four sentences. The 1975 amendments increased significantly the procedures which must be undertaken when a defendant tenders a plea of guilty or nolo contendere, but this change was warranted by the "two principal objectives" then identified in the Advisory Committee Note: (1) *ensuring that the defendant has made an informed plea;* and (2) *ensuring that plea agreements are brought out into the open in court.* An inevitable consequence of the 1975 amendments was some increase in the risk that a trial judge, in a particular case, might inadvertently deviate to some degree from the procedure which a very literal reading of Rule 11 would appear to require.

This being so, it became more apparent than ever that Rule 11 should not be given such a crabbed interpretation that ceremony was exalted *over substance....*

....

.... Subdivision (h) makes no change in the responsibilities of the judge at Rule 11 proceedings, but instead merely rejects the extreme sanction of automatic reversal.

1983 Advisory Committee Note to Fed. R.Crim.P. 11 (emphasis omitted). Thus, the Committee stated that subdivision (h) was intended to make clear that guilty pleas "should not be overturned, even on direct appeal, when there has been a minor and technical violation of Rule 11 which amounts to harmless error." *Id.*

As examples of the need for a harmless-error rule, the Advisory Committee Note referred to instances in which a court failed to mention an essential element of the offense but the defendant's responses clearly indicated his awareness of that element, and instances in which the court understated the maximum penalty for the offense but imposed a sentence that did not exceed the court's mistaken description. Though one could question the characterization of such omissions or misstatements as "minor" errors, the effects of such errors would not affect a defendant's substantial rights in circumstances such as those described. In suggesting that harmless-error analysis might not have been intended to be applied to a Rule 11(d) error, the *Gonzalez* court focused closely on these two examples, which dealt with errors under Rule 11(c). As noted above, however, the language of Rule 11(h) is not limited to errors under any particular

subdivision. And while the Advisory Committee noted that the kinds of Rule 11 violations that might be found to constitute harmless error "are fairly limited" because the issue must be resolved on the basis of the record, not on the basis of speculative assumptions about the defendant's state of mind, the Committee proffered these examples as "[i]llustrative," 1983 Advisory Committee Note to Fed.R.Crim.P. 11, not as the boundaries of the Rule.

Nor was the proposition that Rule 11(h) does not apply to Rule 11(d) errors necessary to the outcome of *Gonzalez*. In that case, the defendant had made a presentence motion to withdraw his plea on the ground that his attorney had stated that Gonzalez was guaranteed a sentence of probation rather than imprisonment. We held that the district court's failure to inquire whether the defendant's plea resulted from any promises required that his plea be vacated, noting that "mistaken reliance by appellant upon misunderstood representations of counsel regarding the sentence to be imposed was a real possibility here," 820 F.2d at 579, thereby implying that the error was likely not harmless.

In sum, we conclude that the language and history of Rule 11(h) indicate that harmless-error analysis may be applied to a failure to comply with Rule 11(d) and that *Gonzalez* does not require a contrary conclusion.

■ In the present case, the record clearly reveals that the error was harmless. Even if Basket initially believed that any cooperation on his part would automatically require the government to make a § 5K1.1 application on his behalf, any such notion was quickly contradicted. Three days after his plea, Basket entered into the written April 22, 1993 Cooperation Agreement, which stated, *inter alia*, that the government would make a § 5K1.1 motion "if it is determined by [the United States Attorney's] Office" that Basket had provided substantial assistance. If the conditional nature of the government's undertaking was contrary to Basket's understanding, Basket, who at all pertinent times was represented by counsel, could have declined to sign the Agreement and could have moved to withdraw his plea

of guilty. He made no such motion. Instead, he and his attorney signed the Agreement, whose signature page stated that, "[w]ith respect to this matter, this Agreement supersedes all prior, if any, understandings, promises and/or conditions between this Office and John Basket." In these circumstances, we conclude that the district court's failure to ask Basket at the time of his plea whether his plea was the result of any promise or of conversations between him or his attorney and the government was an error that did not affect Basket's substantial rights.

■ In addition, we note that Basket's argument on appeal that his belief that a § 5K1.1 letter would be automatic entitles him to withdraw his plea of guilty would appear to have been waived because he entered into the written Agreement which contradicted that belief and expressly superseded any prior agreement, and to be procedurally barred because he failed thereafter to request relief from his plea in the district court. In the nearly two years that followed the April 22, 1993 Cooperation Agreement's express provision that the government itself would determine whether or not a § 5K1.1 application would be made, Basket never moved to withdraw his plea. Indeed, he made no such motion even after learning definitively, prior to his March 23, 1995 sentencing hearing, that the government would not make a § 5K1.1 application. And although the district court stated at that hearing that it probably would not grant a plea-withdrawal motion, the court plainly offered Basket an adjournment should he wish to make such a motion. Having deliberately bypassed his opportunities to file a plea-withdrawal motion in the district court, Basket cannot properly ask this court to permit him to withdraw his plea.

Finally, though it is not necessary to our decision of this appeal, we note the likelihood that Basket's eventual 130–month sentence was substantially shorter than his sentence might have been had the government simply made a § 5K1.1 motion as Basket says he initially expected. Such a motion would have given the court an option—not an obli-

gation—to sentence Basket below the minimum 240 months' imprisonment to which Basket was subject at the time of his plea. By instead withdrawing the prior felony information, the government itself assured Basket of a Guidelines-prescribed imprisonment range of 121–151 months.

## CONCLUSION

We have considered all of Basket's contentions on this appeal and have found in them no basis for relief. The judgment of conviction is affirmed.