Salvatore BENIGNO, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 03–CV–1603 (ADS).

United States District Court, E.D. New York.

Sept. 16, 2003.

took part in a bid-rigging conspiracy in violation of 15 U.S.C. § 1 (the "Sherman Act"). Presently before the Court is a motion by the petitioner to withdraw his plea of guilty and vacate his conviction pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure ("Rule 32(e)") and 28 U.S.C. § 2255 ("Section 2255"), or alternatively to set aside his sentence pursuant to Section 2255.

## I. BACKGROUND

In late February 2001, the petitioner received a "target" letter from the government notifying him that he was the subject of an investigation involving bid-rigging, conspiracy, mail fraud, tax violations and other crimes allegedly committed by individuals who attended Sheriff's auctions in Nassau and Suffolk Counties. After receiving the letter, petitioner retained an attorney and met with the government twice. Thereafter, he pleaded guilty to conspiracy to commit bid-rigging in violation of the Sherman Act.

### A. The Nature of the Conspiracy

The government's investigation revealed that between August 1996 and January 2001, the petitioner, along with several other individuals, regularly attended public auctions run by the Nassau and Suffolk County Sheriffs' Offices. At these auctions, various debtors' property was sold in order to satisfy their debts to judgment creditors. According to the government, while in attendance at these auctions, the petitioner and his co-conspirators engaged in a bid-rigging scheme in which they designated one individual from the group to bid on the auctioned property on the group's behalf, as opposed to each member of the group bidding competitively against each other. This scheme allowed the

Sarita Kedia, Esq., New York, NY, for Petitioner.

Ralph T. Giordano, Chief, New York Office, United States DEpartment of Justice, Antitrust Division, New York, NY, By Debra C. Brookes and John W. McReynolds, Attorneys for the United States.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Central Islip, NY, By Tanya Y. Hill, Assistant United States Attorney.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves charges that the petitioner Salvatore Benigno (the "petitioner")

group to obtain auctioned property at a lower price than it would have had they bid competitively against each other.

The investigation further revealed that after the official auction ended, the co-conspirators would then hold a second, private auction known as a "knock-out" auction. These "knock-out" auctions were held outside the presence of the Sheriffs and were open only to the co-conspirators. During the "knock-out" auctions, the co-conspirators would bid competitively against each other to acquire the property at a price higher than the price paid at the official auction. The winner of the "knock-out" auction would then reimburse the winner of the official auction as well as pay off the other co-conspirators based on the bid price of the property at the time they dropped out of the "knock-out" auction.

In addition to this scheme, the investigation revealed that the co-conspirators on several occasions discouraged third-party bidders from bidding at the Sheriffs' auctions by aggressively approaching them prior to the commencement of the bidding. As a result of this conspiracy, the government asserts that the prices of the properties sold at the Sheriffs' auctions were artificially low, thereby depriving debtors of the satisfaction of their debts and depriving them of obtainment of the full value of the auctioned property.

## B. The Plea Negotiations

After receiving notification of the investigation, the petitioner and coconspirator Joseph Benigno, the petitioner's cousin, retained Steven Heller, Esq., to represent them in this matter. Despite a lack of any federal criminal defense experience, Heller agreed to represent the cousins based on his twenty-year relationship with them and their inability to afford an attorney familiar with federal criminal law.

The petitioner and Heller met with the government twice to discuss the investigation. After hearing the evidence against him, the petitioner indicated that he did not believe that he had committed any antitrust violation and informed Heller that he did not wish to plead guilty to any crimes. Heller advised the petitioner that the government believed that it was in his best interest to plead guilty. In addition, according to the petitioner, the government represented to both Heller and himself that a guilty plea would ensure a sentence without any term of imprisonment. The government contends that no such assurances were given, but instead it simply discussed with the petitioner and Heller previous experiences with similarly situated defendants.

Based on the advise of his counsel and the alleged representations by the government, the petitioner signed a plea agreement which Heller mailed to the government on January 4, 2002. Included in the agreement was a signed signature line affirming that the petitioner entered the agreement knowingly and voluntary.

On March 21, 2002, the government informed Heller that it would request a *Curcio* hearing based on his dual representation of the petitioner and Joseph Benigno. During the *Curcio* hearing, which commenced on April 30, 2002, United States Magistrate Judge Arlene R. Lindsay explained the seriousness of the charges against the petitioner, commenting that a conviction could result in a term of imprisonment. The hearing concluded with a request by the petitioner and Joseph Benigno for advice from an independent counsel on the hazards of dual representation. After receiving such advice, the hearing reconvened on June 28, 2002, at which time the petitioner informed Judge Lindsay that he desired to continue with Heller as his attorney.

After a brief adjournment, the petitioner appeared for his plea allocution. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11"), Judge Lindsay reviewed with the petitioner his rights, including a detailed account of the potential punishment he faced. During this account, the petitioner affirmed that he understood that he faced a potential range of four to ten months' imprisonment and that the ultimate decision concerning his sentence was up to this Court, which was not bound by the government's estimate. Later in the proceeding, the petitioner affirmed that he was satisfied with his legal representation and that he entered the plea voluntarily and of his own free will. Finally, the petitioner affirmed that no one had made any promises to cause him to plead guilty or as to what his sentence would be.

## C. The Presentence Report and the Sentencing Proceeding

On October 3, 2002, a Presentence Report ("PSR") was issued. The PSR noted the petitioner's acceptance of responsibility and his eligibility for a sentence of probation, but also noted that Application Note 5 of the Commentary to Guideline 2R1.1 stated, "[i]t is the intent of the Commission that alternatives such as community confinement not be used to avoid imprisonment of antitrust offenders." The petitioner claims that although he received a copy of the PSR, neither he nor Heller noticed or discussed this statement prior to sentencing.

On October 18, 2003, the petitioner appeared for sentencing at which time he indicated that he had reviewed the PSR. During this proceeding, Heller requested leniency based on the petitioner's lack of criminal history and his dedication to his family. This request supplemented a letter submitted by Heller two days earlier with annexed letters from the petitioner's family and friends. The Court then sentenced the petitioner to a term of four months' incarceration with a surrender date of January 15, 2003.

## D. The Post–Sentencing Proceedings

A day prior to his scheduled surrender, the petitioner, appearing *pro se,* moved by order to show cause pursuant to Section 2255 seeking to vacate his guilty plea and stay his surrender date on the ground that his guilty plea flowed from a jurisdictionally defective Information. At that time, the Court denied the petition. Later that day, the petitioner requested reconsideration of his application. The court granted the application in part, staying the petitioner's surrender date, and appointed a new attorney to represent the petitioner.

On March 24, 2003, the petitioner, then represented by his third counsel, filed the instant motion seeking to withdraw his guilty plea and vacate his sentence on the ground that his plea was not voluntary and intelligent as required by Rule 11. Alternatively, the petitioner moved for his sentence to be set aside because of the alleged ineffectiveness of his original counsel.

## II. DISCUSSION

### A. The Waiver of the Right to Collaterally Attack the Conviction

The government contends that the petitioner is barred from collaterally attacking his conviction based on an express waiver term in the plea agreement. Paragraph 4 of the plea agreement reads in part,

> The defendant will not file an appeal or otherwise challenge the conviction or sentence in the event that the court imposes a term of imprisonment of 10 months or below. This waiver is binding on the defendant even if the Court

employs a Guidelines analysis different from that set forth in Paragraph 2.

■ "There is no general bar to a waiver of collateral attack rights in a plea agreement." *Frederick v. Warden, Lewisburg Correctional Facility*, 308 F.3d 192, 195 (2d Cir.2002) (citing *Garcia–Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam)). "However, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been produced, here, the plea agreement." *Id.* (citations omitted).

■ Where, as here, a petitioner claims a violation of Rule 11 or the ineffectiveness of trial counsel, the Second Circuit has stated that she is not barred under the terms of the plea agreement from bringing a petition to vacate the conviction based on the legal shortcomings of the process in which the waiver was obtained. *See id.* at 196. Accordingly, the Court will address "the merits of [the] petition notwithstanding [the petitioner's] general waiver of the right to collaterally attack his conviction." *Id.* at 193; *see also Lebron v. United States*, 267 F.Supp.2d 325, 328 (E.D.N.Y. 2003).

**B. The Alleged Rule 11 Violation**

Where, as here, a petitioner moves to withdraw his plea of guilty after sentence has been imposed, "a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255." Fed.R.Crim.P. 32(e). Under Section 2255, "[a] prisoner in custody under sentence of a court established by [an] Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.A. § 2255. "If the court finds ... that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall ... resentence [the prisoner] or grant a new trial ... as may appear appropriate." *Id.*

The petitioner's primary argument calls for a *withdrawal* of his guilty plea and the setting aside of his sentence. As Rule 32(e) and Section 2255 do not provide for a *withdrawal* of a guilt plea after sentence has been imposed, the Court has construed the petitioner's request as a motion for his conviction to be vacated and set aside and the relief of a new trial to be granted.

■ The petitioner argues that his motion should be granted because the Court allegedly violated Rule 11 during his plea allocution. "Rule 11 sets forth requirements for a plea allocution and 'is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *United States v. Andrades*, 169 F.3d 131, 133 (2d Cir.1999) (quoting *United States v. Renaud*, 999 F.2d 622, 624 (2d Cir.1993) (internal quotation marks omitted)). "This does not mean, however, that the district court must anticipate and warn the defendant of 'every conceivable collateral effect the conviction entered on the plea may have.'" *United States v. Couto*, 311 F.3d 179, 188–89 (2d Cir.2002) (citing *Bye v. United States*, 435 F.2d 177, 179 (2d Cir. 1970)). "Rather, 'the purpose of Rule 11[is] to insure that an accused is apprised of the *significant* effects of his plea so that his decision to plead guilty and waive his right to trial is an informed one.'" *Id.* at 189 (quoting *Bye*, 435 F.2d at 180) (emphasis in original).

■ To that end, "[the Second] Circuit has 'adopted a standard of strict adherence

to Rule 11.'" *United States v. Livorsi,* 180 F.3d 76, 78 (2d Cir.1999) (quoting *United States v. Lora,* 895 F.2d 878, 880 (2d Cir.1990)). As such, review of an acceptance of a guilty plea "examine[s] critically even slight procedural deficiencies to ensure that ... none of the defendant's substantive rights ha[ve] been compromised." *Id* at 78 (quoting *United States v. Maher,* 108 F.3d 1513, 1520 (2d Cir.1997) (internal quotation marks omitted)). "[I]f the requirements of Rule 11 have not been met, 'the plea must be treated as a nullity.'" *Renaud,* 999 F.2d at 624 (quoting *United States v. Journet,* 544 F.2d 633, 636 (2d Cir.1976)). However, "[n]ot every deviation from Rule 11 constitutes a violation of the Rule." *Frederick,* 308 F.3d at 197. "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). Therefore, a guilty plea should not be vacated "when there has been [only] a minor and technical violation of Rule 11 which amounts to harmless error." *Renaud,* 999 F.2d at 624 (quoting *United States v. Ferrara,* 954 F.2d 103, 106 (2d Cir.1992) (quoting Fed. R.Crim.P. 11 advisory committee's note (1983 amendment))).

One of the requirements set forth by Rule 11 is that a guilty plea be voluntary. This requirement codifies the due process standard set forth in *Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–13, 23 L.Ed.2d 274 (1969), that a guilty plea be intelligently and voluntarily given and that the defendant be competent to understand the nature of the charge, his constitutional rights and the scope of the penalty provided by law. The Second Circuit has identified three major purposes of Rule 11(d): (1) to make certain that the plea is indeed voluntary; (2) to prevent the

misconception by defendants that anyone but the court has the authority to determine their sentence; and (3) to preserve the integrity of the plea by eliminating the basis for a later claim by the defendant that the plea was defective. *United States v. Gonzalez,* 820 F.2d 575, 579 (2d Cir. 1987).

The petitioner claims that his acceptance of a guilty plea violated Rule 11(d) because it was not voluntary. Specifically, he claims that the government made representations to both his counsel and himself that a guilty plea would earn a sentence without imprisonment, and that he pled guilty based in large part on these alleged representations.

The petitioner's assertions are contradicted by the record. During the plea allocution, Judge Lindsay specifically addressed these issues:

THE COURT: Are you entering this plea of guilty voluntarily and of your own free will?

DEFENDANT S. BENIGNO: Yes.

THE COURT: Has anyone threatened or forced you to plead guilty?

DEFENDANT S. BENIGNO: No.

THE COURT: Other than the agreement with the Government that is set forth on the record, has anyone made any promises to cause you to plead guilty?

DEFENDANT S. BENIGNO: No.

THE COURT: Has anyone made any promises to you as to what your sentence will be?

DEFENDANT S. BENIGNO: No.

P. Tr. 28–29.*

In addition to the petitioner's responses to Judge Lindsay's inquiries, the petitioner was explicitly warned that the final deci-

---

* Citations to the petitioner's plea on June 28, 2002 are referred to as "P. Tr. __". While citations to the petitioner's sentence on October 18, 2002 are referred to as "S. Tr. __".

sion on sentencing was up to this Court and that this Court was not bound by the government's estimated guideline range:

> THE COURT: I just want you to be very clear that although the Government estimates that the guideline range here is a Level 9 which carries a range of imprisonment of from four to ten months, what you both need to be absolutely clear about is that that's the Government's estimate and it is not a binding estimate on Judge Spatt. Ultimately, it will be Judge Spatt who will determine what the proper guideline range is and he might conclude that the guideline range should be higher which means the range of imprisonment could be higher, or he may conclude that the guideline range is lower. In either case, whether he goes higher or lower, you can't withdraw your pleas. Do you each understand that?
>
> DEFENDANT S. BENIGNO: Yes.
>
> .　　.　　.　　.　　.
>
> THE COURT: The only agreement you have is that if Judge Spatt imposes a sentence of imprisonment of more than ten months you can appeal the sentence but that doesn't mean that you can withdraw your plea and your right to appeal the sentence doesn't mean that he can't impose a sentence of eleven months, twelve months, whatever the guideline range calls for and the basis of any appeal would only be is it legally correct.

P. Tr. 11–12.

■ "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Indeed, " '[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.' " *United States v. Hirsch,* 239 F.3d 221, 225 (2d Cir.2001) (quoting *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997)). Nor should they be permitted to vacate a guilty plea after sentence has been imposed. The petitioner contends, however, that his assertions are not simply "bald statements" and points to his former attorney's Affirmation regarding the government's representations to support his contention. Even with the Affirmation, however, the substance of the petitioner's assertions are belied by his responses to Judge Lindsay's inquiries. Such assertions are also contradicted by the express terms of the plea agreement that both the petitioner and his attorney signed, which explicitly states that "[n]o promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties."

The Second Circuit has stated that when a defendant pleads guilty while being aware of the potential maximum prison term and knowing that the sentence to be imposed was within the court's discretion, "a defendant [is] not entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence." *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989). Although *Sweeney* dealt with a pre-sentence motion to withdraw a guilty plea, it lends support for the government's position. Where a defendant knows the potential sentence he faces, pleads guilty and is sentenced, allowing the post-sentence prong of Rule 32(e) to serve to have the conviction vacated and set aside "would pervert the rule and threaten the integrity of the sentencing process." *Id.* at 70.

■ The petitioner also attacks the voluntariness of his guilty plea by claiming that he believed the word "imprisonment" to mean "home detention." Specifically,

he claims that based on the government's alleged representations regarding sentencing and his attorney's recounting of such representations, the petitioner never contemplated a sentence of custodial incarceration prior to its imposition during the sentencing proceeding.

A review of the Second Circuit's precedent concerning the difference between the definition of "imprisonment" and "community confinement" is relevant to the instant discussion. " 'Imprisonment' and 'community confinement' are not synonyms. 'Imprisonment' is the condition of being removed from the community and placed in prison, whereas 'community confinement' is the condition of being controlled and restricted within the community." *United States v. Adler*, 52 F.3d 20, 21 (2d Cir.1995). Under this rationale, "imprisonment" and "home detention" are differing punishments as well, with the latter meaning the condition of being detained within the home. Such an analysis is supported by the language of Sentencing Guidelines Section 5C1.1(c)(2), which allows a court to order "a sentence of *imprisonment* that includes a term of supervised release with a condition that substitutes community confinement or *home detention* . . . provided that at least one month is satisfied by *imprisonment*." U.S. Sentencing Guidelines Manual § 5C1.1(c)(2) (2001) (emphases added). By phrasing the Guidelines language to limit the condition of home detention to supervised release and requiring at least one month imprisonment, the drafters made it clear that "home detention" is a different type of punishment than "imprisonment." This language was candidly summarized in the pre-sentence report, which states,

"Guideline Provisions: Based on a total offense level of 9 and a criminal history category of 1, the guideline *imprisonment* range is 4 to 10 months. As an alternative, pursuant to Guideline 5C1.1(c)(2), Your Honor may impose a term of *imprisonment* of 1 month followed by a term of supervised release with a special condition requiring 3 months community confinement or *home detention*."

P.S.R. ¶ 56 (emphases added). The report's language clearly distinguishes *imprisonment* from *home detention*. Both the petitioner and his attorney stated that they reviewed the PSR and found it to be error-free:

THE COURT: Have you reviewed the presentence report with the defendant?

MR. HELLER: Yes, your honor.

THE COURT: Are there any errors in the presentence report?

MR. HELLER: No, there aren't, your honor.

THE COURT: Mr. Benigno, have you reviewed the presentence report?

THE DEFENDANT: Yes, your honor.

THE COURT: Are there any errors in the presentence report?

THE DEFENDANT: No.

S. Tr. 2–3.

■ The petitioner also claims a second, separate violation of Rule 11(d) based on the court's failure to specifically ask "whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney." Fed. R.Crim.P. 11(d). Although the absence of this inquiry is a technical violation of Rule 11, "[n]onetheless, such an error does not automatically require reversal." *United States v. Basket*, 82 F.3d 44, 48 (2d Cir. 1996). The Second Circuit has held that Rule 11(d) falls within the purview of Rule 11(h)'s harmless-error analysis. *Id.* at 48–49. The relevant inquiry accordingly be-

comes whether this violation of Rule 11(d) affected the petitioner's substantial rights. The Court finds that it did not.

The petitioner asserts that Judge Lindsay's failure to inquire concerning prior discussions between the prosecution and himself and his counsel perpetuated "misconceptions" about sentencing that the petitioner would have been "disabused" of had she made the proper inquiry. The Second Circuit's interpretation of the purpose of Rule 11(d), however, is narrower than the petitioner suggests. The Second Circuit has stated that Rule 11(d) is meant to prevent the misconception by defendants that anyone but the court has the authority to determine their sentence. *Gonzalez,* 820 F.2d at 579. Judge Lindsay did just that when she told the petitioner:

> THE COURT: I just want you to be very clear that although the Government estimates that the guideline range here is a Level 9 which carries a range of imprisonment of from four to ten months, what you both need to be absolutely clear about is that that's the Government's estimate and it is not a binding estimate on Judge Spatt. Ultimately, it will be Judge Spatt who will determine what the proper guideline range is and he might conclude that the guideline range should be higher which means the range of imprisonment could be higher, or he may conclude that the guideline range is lower. In either case, whether he goes higher or lower, you can't withdraw your pleas. Do you each understand that?
> DEFENDANT S. BENIGNO: Yes.

P. Tr. 11. In addition, Judge Lindsay reiterated the point when she informed the petitioner of the potential maximum sentence that he could receive:

> THE COURT: Now, in actuality, what you need to be aware of is what is the maximum that Judge Spatt can sentence

you to. The maximum term of imprisonment in this case is three years. That's the maximum he can impose but within that range depending on what Judge Spatt determines the guideline range to be, he's not going to be limited by the Government's estimate.

P. Tr. 12. Finally, Judge Lindsay confirmed that the petitioner read and understood the plea agreement, which stated clearly that the Guidelines estimate set forth in the agreement was not binding on the Court and which was signed by both the petitioner and his attorney.

Taken together, it is clear that Judge Lindsay did her best to achieve the Second Circuit's stated goal of Rule 11(d) despite her procedural error. The absence of the second half of the Rule 11(d) inquiry left no misconception with the petitioner concerning who had the authority to determine his sentence or what that sentence may be. Accordingly, the error was harmless pursuant to Rule 11(h).

The petitioner relies on *Gonzalez* as authority for the proposition that the absence of the "prior discussions" inquiry requires vacatur of the sentence. In *Gonzalez,* the Second Circuit vacated a conviction predicated on a guilty plea because of a potential misunderstanding that the defendant may have had as a result of one or several of his counsel's remarks regarding sentencing. *Gonzalez,* 820 F.2d at 579. The court reasoned that the harmless-error analysis in Rule 11(h) was not applicable because the defendant showed no clear indication of his awareness that not even his attorney could make a binding promise of a non-custodial sentence. *Id.* at 579–80. However, the Second Circuit has made it clear that the harmless-error analysis of Rule 11(h) is generally applicable to Rule 11(d), as noted above. *See Basket,* 82 F.3d at 48–49. Indeed, the petitioner in the instant case did indicate his awareness

that only this Court can determine his sentence and that promises by the prosecutor are not binding on the court. As such, the petitioner's argument is without merit.

Finally, in support of the above analysis, it is relevant to note that the 2002 amendments to Rule 11(d) specifically eliminated the "prior discussions" language from the rule.

> The reference to an inquiry in current Rule 11(d) whether the plea has resulted from plea discussions with the government has been deleted. That reference, which was often a source of confusion to defendants who were clearly pleading guilty as part of a plea agreement with the government, was considered unnecessary.

Fed.R.Crim.P. 11 advisory committee's note (2002 amendment). The committee note clearly states that the inquiry was considered unnecessary; and its absence should not supercede the harmless-error analysis and serve as the basis for a vacatur of a conviction. Accordingly, the motion to withdraw the petitioner's guilty plea and vacate his conviction based on a Rule 11 violation is denied.

## C. The Constitutional Inadequacy of the Plea

In addition to his attack on the plea allocution, the petitioner claims that, even if this Court finds that his allocution complied with Rule 11, his plea was nonetheless involuntary because it was based on alleged critical misrepresentations by the government and the petitioner's first attorney, Steven Heller. To support this assertion, the petitioner submitted an affirmation from Heller confirming that he "was informed by [the United States Attorney's Office and the Department of Justice, Antitrust Division,] that ... if [the petitioner pled guilty], he would under the guidelines be sentenced to a term of house arrest as in prior cases of this nature." Heller further affirmed that he and the petitioner "were assured that he would not receive any jail term if he [pled guilty]." Finally, Heller states that "[he is] certain that it was these assurances that led to Mr. Benigno's decision to plead guilty in this matter."

The government disputes Heller's affirmation, claiming that "[s]tatement's [sic] by prosecutors, in the context of plea negotiations, do not come even close to becoming 'assurances.'" The government also points out that the petitioner was aware of the minimum and maximum terms of imprisonment if convicted and that he was aware that sentencing was entirely in the Court's discretion.

The petitioner relies on *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) for the proposition that if there exists a "possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment," the court must, at a minimum, examine the defendant's assertions. *Blackledge*, 431 U.S. at 75, 97 S.Ct. at 1629–30. In *Blackledge*, the Supreme Court affirmed a reversal of a denial of a request for an evidentiary hearing into a claim that a guilty plea was involuntary because the prosecutor, the court and the defense attorney promised the defendant a sentence of ten years when in fact he was sentenced to seventeen-to-twenty-one years. The Supreme Court remanded the case and ordered that the defendant be given a full opportunity for presentation of the relevant facts, commenting that it may turn out that a full evidentiary hearing was not necessary. *Id.* at 82–83, 97 S.Ct. 1621.

The facts in *Blackledge* are different from the instant case in several respects. First, in that case, the court took part in the alleged promise of sentence. *Id.* at 68–69, 97 S.Ct. 1621. In this case, Judge Lindsay properly informed the petitioner of the actual minimum and maximum sentence that he faced and advised him repeatedly that this Court had the sole discretion to determine his sentence. As previously discussed, the petitioner received a plea allocution that complied with Rule 11 and that achieved the goals for that rule as stated by the Second Circuit. Any contrary belief should have been dispelled by Judge Lindsay's warnings, as described above.

Second, the defendant in *Blackledge* claimed that his lawyer instructed him to deny the existence of any promises. *Id.* at 69, 97 S.Ct. 1621. In the instant case, the petitioner makes no claim that he was instructed on how to answer the court's questions during the allocution. In fact, the petitioner does not explicitly assert anywhere in either of his lengthy memoranda that he did not in fact answer the Court's questions truthfully and honestly. Finally, *Blackledge* involved a state habeas corpus petition, *id.* at 65, 97 S.Ct. 1621, while here the petition involves a federal conviction. In that regard, *Blackledge* itself explicitly states that:

> In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a 2255 motion, even though he could not similarly dispose of a habeas corpus petition challenging a state conviction but presenting identical allegations.... To this extent, the standard may be administered in a somewhat different fashion.

*Id.* at 74 n. 4, 97 S.Ct. 1621.

Despite the differences between *Blackledge* and the instant case, this Court recognizes the thrust of that case and therefore will examine a defendant's allegation of constitutional inadequacy of a guilty plea for viability, despite the adequacy of the Rule 11 plea allocution. Under this review, the Court holds that an evidentiary hearing is not necessary to determine that the petitioner's claim of constitutional inadequacy lacks merit.

 " '[I]f a defendant's guilty plea is not ... voluntary and knowing, it has been obtained in violation of due process and is therefore void.' " *United States v. Yu*, 285 F.3d 192, 198 n. 2 (2d Cir.2002) (quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969)). As discussed above, Rule 11 codifies the due process standard for obtaining a guilty plea as set forth by the Supreme Court in *Boykin*. This Court has determined that the petitioner's allocution met those requirements. Hence, the only remaining issue is whether the alleged misrepresentations of the government and Heller vitiated the petitioner's ability to knowingly and voluntarily plead guilty. The court finds that they did not.

The Second Circuit has stated that a guilty plea cannot be withdrawn because a defendant's attorney misled him regarding the consequences of his plea. *See United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir.2001) (per curiam). The Second Circuit has also dismissed the contention that a defendant's guilty plea was unknowing and involuntary due to misrepresentations by the prosecution and his own counsel concerning his possible sentence. *See Alessi v. United States*, 653 F.2d 66, 69 (2d Cir.1981). Under the weight of this precedent, the petitioner's argument cannot serve as the basis for relief of the type the petitioner seeks. Accordingly, the motion to vacate the conviction based on the constitutional inadequacy of the plea is denied.

## D. The Claim of Ineffective Assistance of Counsel

In the alternative to arguing that his plea was unknowing and involuntary, the petitioner asserts that he received ineffective assistance from his first attorney, Steven Heller, during the plea negotiation and sentencing phases of his case. In particular, the petitioner argues that Heller was ineffective because: (1) he advised him to plead guilty even though he informed counsel that he was not guilty; (2) he promised the petitioner that he would not receive a term of custodial incarceration; (3) he failed to advise the petitioner after receipt of the PSR that the Sentencing Commission recommended a term of custodial punishment; (4) he failed to object to holding the sentencing hearing less than 35 days after receiving the PSR (*See* Rule 32(b)(6)); and (5) he failed to argue that the petitioner's offense fell outside the heartland of offenses contemplated by the Sentencing Commission. Based on the above claims of ineffective assistance of counsel, the petitioner moves to set aside or vacate his sentence.

To establish ineffective assistance of counsel during the plea process, a petitioner must demonstrate: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (setting forth the modern standard for evaluating ineffective assistance of counsel); *see also Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985) (applying the *Strickland* standard to counsel's performance during the plea process). When applying the *Strickland* test, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* (citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). "The court's central concern is not with 'grading counsel's performance,' ... but with discerning 'whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.' " *United States v. Aguirre,* 912 F.2d 555, 561 (2d Cir.1990) (quoting *Strickland,* 466 U.S. at 696–97, 104 S.Ct. at 2069).

### 1. As to Petitioner's Claim that Counsel Advised him to Plead Guilty Even Though He Informed Counsel That He Was Not Guilty

The petitioner's first claim of ineffective assistance of counsel is that Heller advised him to plead guilty even though the petitioner informed Heller that he was not guilty. Heller stated in an affirmation that, "[if] we had not been assured by the government officials that Mr. Benigno would not receive a term of imprisonment if he pleaded guilty, I would not have recommended that he do so." In essence, this claim is based on three premises: (1) the prosecution allegedly misrepresented the petitioner's potential sentence exposure to Heller; (2) based on this misrepresentation, Heller advised the petitioner to plead guilty despite the petitioner's claim that he was in fact not guilty of any antitrust crimes; and (3) such advice constituted ineffective assistance of counsel because of its faulty premise.

As discussed above, the Second Circuit has rejected claims of ineffective assistance of counsel where the prosecution and the defendant's attorney have misinformed the defendant about the possible sentences he could receive. *Alessi,* 653 F.2d at 69. Moreover, the Court relies on the petitioner's own sworn testimony affirming that he took part in a conspiratorial agreement to illegally restrain interstate trade and commerce in violation of the Sherman Act, *see* P. Tr. 29, which "carr[ies] a strong presumption of verity," *Blackledge,* 431 U.S. at 74, 97 S.Ct. at 1629, and is in direct contradiction with his current claim. The Court has declined to give credence to assertions that an attorney advised a defendant to plead guilty irrespective of the truth of his innocence when the record as a whole belied such a protestation. *See Rosenfeld v. United States,* 972 F.Supp. 137, 141 (E.D.N.Y.1997). The overall record in this case similarly contradicts the petitioner's present assertion.

In addition, the petitioner fails to meet the second prong of the *Strickland* standard. The petitioner makes no argument that had he proceeded to trial, there would have been a reasonable probability that he would have been acquitted. The closest he comes to making such an argument is the discussion of this Court's initial reservations regarding the charges against one of his co-conspirators. In fact, however, two of the petitioner's co-conspirators pleaded guilty prior to the petitioner's plea, and the possibility existed that they would have been called as witnesses to testify against him at a trial. Also, Heller was made privy to some of the government's evidence against the petitioner, including portions of extensive tape recordings that implicated him in the conspiracy. Thus, the Court is unable to conclude that there is a reasonable probability that but for Heller's alleged advise, the result of the proceedings would have been different.

As such, the petitioner fails to show that he suffered prejudice as a result of Heller's advice to plead guilty.

**2. As to the Petitioner's Claim that Counsel Promised Him that He Would Not Receive a Term of Custodial Incarceration**

█ The petitioner next claims that Heller provided ineffective assistance because he assured the petitioner that no custodial sentence would be imposed. However, as discussed above, the Second Circuit has made it clear that a promise of sentence by a defense attorney does not provide an adequate basis for a defendant to withdraw a guilty plea. *See Hernandez,* 242 F.3d at 112–13 (per curiam); *Sweeney,* 878 F.2d at 70. Indeed, "[a] district court [is] entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below [ten] months, and had been made no promises except those contained in the plea agreement." *Hernandez,* 242 F.3d at 112 (citing *Blackledge,* 431 U.S. at 74, 97 S.Ct. at 1629). As such, this argument is without merit.

The petitioner argues that his plea must be vacated in this case. In support of this contention, the petitioner cites *Boria v. Keane,* 99 F.3d 492, 496–98 (2d Cir.1996) (counsel is constitutionally required to discuss advisability of accepting an offered plea bargain and failure to do so violates a defendant's right to effective assistance of counsel), and *United States v. Gordon,* 156 F.3d 376, 380–82 (2d Cir.1998) (counsel's gross underestimation of sentence exposure during plea negotiations constituted ineffective assistance of counsel where defendant rejected plea bargain offer), and

argues that failure to accurately advise a client as to the potential sentence exposure of a guilty plea must be deemed sub-standard performance.

The petitioner's argument is without merit. In the two cited cases, the defendants rejected plea bargains in lieu of trials based on their counsels' faulty advice regarding sentence exposure. Had their counsels given objectively accurate advice, there was a reasonable probability that the results of those proceedings would have been different, i.e. the defendants would have accepted the plea bargains and would have received reduced sentences.

In this case, the petitioner accepted a plea bargain based on his counsel's alleged faulty advice. As outlined above, the petitioner makes no showing that but for his counsel's alleged faulty advice, there existed a reasonable probability that he would have succeeded at trial. Furthermore, had the petitioner been convicted after a trial, he would have faced a sentence potentially twice as harsh, if not more, than what he received. By entering into a plea agreement and accepting responsibility for his actions, the petitioner earned a two-level reduction in his offense computation.

Finally, there is recent Second Circuit precedent that a defense attorney's mistaken advice on sentence exposure leading to the defendant's rejection of a plea agreement did not warrant a finding of ineffective assistance of counsel because the defendant could not prove prejudice. *Aeid v. Bennett*, 296 F.3d 58, 63–64 (2d Cir.2002). Based on *Aeid* and in light of the potential for a harsher sentence that the petitioner avoided by pleading guilty, he has not demonstrated that he suffered prejudice by his counsel's erroneous advice on sentence exposure.

It is also relevant to note that any faulty advice on potential sentence exposure "was cured by the Court's detailed questioning of the petitioner at the plea allocution, which alerted the petitioner of the 'actual sentencing possibilities.'" *Rosenfeld*, 972 F.Supp. at 146 (quoting *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir.1992) (citation omitted)).

### 3. As to Petitioner's Claim that Counsel Failed to Advise Him After Receipt of the PSR That the Sentencing Commission Recommended a Term of Custodial Punishment

The petitioner argues that Heller's failure to inform him that the Sentencing Commission recommended that alternatives to prison not be imposed in antitrust cases, constituted ineffective assistance. Specifically, the petitioner claims that "Heller never advise[d][him] that the Sentencing Commission recommends sentences of imprisonment for antitrust offenders." The petitioner further claims that prior to the imposition of his sentence, he was unaware that he could face a term of custodial incarceration. Again, these assertions are totally contradicted by the record. Heller told this Court that he reviewed the PSR with the petitioner. S. Tr. 2–3. The petitioner told this Court that he had reviewed the PSR. *Id.* They both stated that they found no errors in the PSR. *Id.* Furthermore, during his plea allocution, the petitioner was informed by Judge Lindsay of the maximum and minimum sentences that this Court could impose. P. Tr. 11–12.

In addition to conflicting with the assertions made in the petitioner's affidavit and Heller's affirmation, the overall record provides no basis by which to warrant a finding that the petitioner was prejudiced by Heller's lack of advice on this issue. There is no showing that, had Heller submitted "motions" in determining the petitioner's sentence as he claims in his affir-

mation he would have, the Court would have granted such applications. Indeed, the Court has sentenced the petitioner to the lowest end of the applicable guideline range and imposed a fine below the mandatory minimum. Again, the petitioner cannot show that, but for his counsel's lack of advice, there was a reasonable probability that an alternative course of action from the guilty plea, i.e. a trial, would have provided a different result. Accordingly, the petitioner fails to establish the second prong of the *Strickland* standard.

### 4. As to Petitioner's Claim that Counsel Failed to Object to Holding the Sentencing Hearing Less Than 35 Days After Receiving the PSR, As Stated by Rule 32(b)(6)

 The petitioner argues that Heller's failure to object to holding the sentencing proceeding within 35 days of receipt of the PSR, the time limit set forth in Rule 32(b)(6), constitutes ineffective assistance of counsel. In particular, he argues that he would have withdrawn his guilty plea upon discovering the Guidelines advisory for anti-trust cases regarding custodial incarceration, if he had the additional time to review the PSR. The petitioner further claims that Heller was ineffective because he failed to inform him of his procedural option of objecting to the pre-35 day sentencing and of his ability to withdraw his guilty plea.

Rule 32(b)(6) states that "[n]ot less than 35 days before the sentencing hearing—unless the defendant waives this minimum period—the probation officer must furnish the presentence report to the defendant, the defendant's counsel, and the attorney for the Government." Fed.R.Crim.P. 32(b)(6). A number of courts have held that participation in a sentencing proceeding without objection on the basis of the 35-day rule constitutes a waiver of this requirement. *See United States v. Jones,* 80 F.3d 436, 438 (10th Cir.1996); *United States v. Navejar,* 963 F.2d 732, 734–35 (5th Cir.1992); *United States v. Knorr,* 942 F.2d 1217, 1221 (7th Cir.1991); *United States v. Turner,* 898 F.2d 705, 714–15 (9th Cir.1990). While the Second Circuit has not made such a ruling on this issue, it has declined to determine that a defense attorney's failure to object on this ground constitutes ineffective assistance of counsel. *See United States v. Workman,* 110 F.3d 915, 919–20 (2d Cir.1997).

Here, the Court holds that Heller's failure to object constitutes a waiver of the Rule 32(b)(6) time requirement and does not constitute ineffective assistance of counsel. The PSR, which was only 17 pages in length, was in the possession of Heller and the petitioner for 15 days. While the petitioner was entitled to additional time with the report under the rule, with reasonable certainty, he had enough time to review it with counsel, as he stated he did under oath before this Court. S. Tr. 2–3. Moreover, there has been no showing that if the petitioner had the extra 20 days, there would have been a different result. Accordingly, this argument does not meet the second prong of the *Strickland* standard because the petitioner failed to demonstrate that Heller's failure to object to the timeliness of the PSR prejudiced him in any manner.

### 5. As to Petitioner's Claim that Counsel Failed to Argue That his Offense Fell Outside the Heartland of Offenses Contemplated By the Sentencing Commission

 The petitioner's final argument is that Heller was ineffective because he failed to argue that the petitioner's conduct fell outside the heartland of the offense conduct contemplated by the Sentencing Commission when drafting

Application Note 5. Again, the petitioner provides no basis in the record to show that such an omission prejudiced him.

"The Sentencing Commission has explained that 'courts should treat each guideline' as 'carving out' a 'heartland,' a set of typical cases' and that, 'when a court finds an atypical case,' that 'significantly differs from the norm, the court may consider whether a departure is warranted.' " *United States v. Milikowsky*, 65 F.3d 4, 7 (2d Cir.1995) (quoting *United States v. Merritt*, 988 F.2d 1298, 1309 (2d Cir.1993)) (quoting U.S.S.G., intro. 4(b)). Based on this important rule, a departure from the guidelines should be supported by a showing that the conduct of the applicant differs from that regarded by the Commission as within the typical set of cases, also known as the heartland. Indeed, it is "the Commission's expectation that departures based on factors not mentioned in the Guidelines will be highly infrequent." *Koon v. United States*, 518 U.S. 81, 82, 116 S.Ct. 2035, 2038, 135 L.Ed.2d 392 (1996).

The petitioner provides no support for his argument that this case warranted a motion for a downward departure on the ground that it was "outside the heartland." Nor is there any indication that such a motion, if made, would have been granted. Indeed, in both his initial memorandum and reply memorandum, there is only a reference to this Court's comments regarding a plea allocution of one of the petitioner's co-conspirators. These comments by the Court were directed to the sufficiency of that allocution and not to an "atypical case." This crime was not outside the "heartland" of an anti-trust offense. Indeed, a review of recent case law shows that similar bid-rigging conspiracies have in fact been litigated under the Sherman Act, both civilly and criminally. *See New York ex rel. Spitzer v. Feldman*, No. 01–6691, 2003 WL 21576518 (S.D.N.Y. July 10, 2003); *United States v. Pook*, No. 87–274, 1988 WL 36379 (E.D.Pa. Apr.8, 1988).

Accordingly, under the *Strickland* standard, the petitioner has failed to demonstrate that Heller's failure to make an "outside the heartland" downward departure motion constituted ineffective assistance of counsel. Further, even if the Court assumes that such conduct did fall below the objective standard, the petitioner failed to show that he was prejudiced by such failure. Thus, neither prong of the *Strickland* analysis is met by this argument. Accordingly, the petitioner has failed to establish ineffective assistance of counsel in either the plea or the sentencing phase of this case.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the petitioner's motion to withdraw his plea of guilty and vacate his conviction pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure and 28 U.S.C. § 2255 for lack of voluntariness as required by Rule 11 of the Federal Rules of Criminal Procedure is denied; and it is further

**ORDERED,** that the petitioner's motion to withdraw his plea of guilty for lack of voluntariness under the Constitution is denied; and it is further

**ORDERED,** that the petitioner's motion to set aside or vacate his sentence pursuant to 28 U.S.C. § 2255 for ineffective assistance of counsel is denied; and it is further

**ORDERED,** that pursuant to Fed. R.App. P. 22(b) and 28 U.S.C. § 2253(c)(2) a certificate of appealability is denied as the petitioner has not made a substantial showing of a denial of a constitutional right in that the issues involved in this case are not debatable among jurists of reason; that a court could resolve the issues in a

different manner; or that the questions involved deserve encouragement to proceed further, *see Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 112 (2d Cir. 2000); and it is further

**ORDERED,** that the petitioner is to surrender himself to the Office of the U.S. Marshall, 225 Cadman East Plaza, Brooklyn, New York, on October 20, 2003, prior to 12:00 noon, to begin serving his sentence of four months' incarceration; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**